Charles N. Russell and John McCarthy, Respondents, *v.* Frederick T. Carrington and William I. Preston, Appellants.

On the sale of a specified quantity of grain, part of a cargo stored in an elevator, the delivery by the vendors to the vendees, upon payment of the agreed price, of a receipted bill of sale, and, subsequently, of an order for the grain purchased, drawn upon the elevator by the person upon whose account the cargo was stored, and who was superintendent of the elevator, sufficiently manifests an intention to pass the title and renders the transaction an executed contract, without actual separation or delivery of the property.

Accordingly, where the plaintiffs purchased 400 bushels of corn, part of a specified cargo stored in an elevator on account of one Wright, who was superintendent of the elevator and on whose orders only the person in charge was authorized to deliver grain; and paid the agreed price, receiving from the defendants a receipted bill thereof; and the defendants thereupon drew an order upon Wright, superintendent, in favor of the plaintiffs, and Wright, on receipt of their order, drew his own order, as superintendent, in favor of the plaintiffs, which last order was received by the plaintiffs, from a clerk of the defendants, left by them with their agents and by their agents handed to the master of the vessel by which the plaintiffs intended to ship the corn, but, before presentation of the order and within a few hours, the elevator and its contents were consumed.— *Held*, in an action to recover back the purchase money (EARL, Ch. J., and HUNT, J., *contra*), that title had passed to plaintiffs and the property was at their risk.

(Argued by the appellants, and submitted on the part of the respondents, January, 1870; decided March 18th, 1870.)

THIS was an action for the recovery of the price paid by the plaintiffs to the defendants for a quantity of corn, which, after the agreement of purchase, was destroyed by fire and was never actually received into the possession of the plaintiffs. The claim was based upon the assumption that the title had never passed, and that the defendants had refused to fulfill their contract. The issues were tried by Justice MULLIN, at the Otsego County Circuit, without a jury. He rendered judgment for the plaintiffs, which was affirmed at the General Term of the fifth judicial district (two judges concurring and one dissenting), and the case comes before this court on an appeal by the defendants.

The facts are sufficiently stated in the opinion of the court.

*Edwin Allen*, for the appellants, cited Pars. Mer. L. pp. 41, 42; *Riddle* v. *Varnum* (20 Pick. R., 280); *Lee* v. *Kilbourn* (3 Gray R., 598); Williams on Pers. Prop., 37, note 1; *Olyphant* v. *Baker* (5 Den., 379); *Brade* v. *Brooks* (22 Me. R., 470); 2 Kent, 493; *Davis* v. *Moore* (13 Me. R., 427); *Whitehouse* v. *Frost* (12 East, 614); *Pleasants* v. *Pendleton* (6 Rand., 47); *Jackson* v. *Anderson* (4 Taunt., 24); *Dawson* v. *Osborn* (1 Pick. R., 477); *Bradley* v. *Wheeler* (4 Robt. R.,

18); *Waldron* v. *Romaine* (22 N. Y., 368); *Kimberly* v. *Patchin* (19 N. Y., 330); *Elmore* v. *Stone* (1 Taunt., 458); *Stanton* v. *Small* (3 Sand. S. C. R., 240); *Leonard* v. *Davis* (1 Black. U. S. R., 482); *Cushman* v. *Holyoke* (34 Me., 292); *Cunningham* v. *Asterbrooks* (20 Me., 553); *Cole* v. *Transportation Co.* (26 Vt., 87); 2 Pars. on Cont., 323; Chitty on Cont., 9th ed., 391, note 1.

*Bagley & Wright*, for the respondents, cited *Rapelye* v. *Mackie* (6 Cow., 250); *Outwater* v. *Dodge* (7 Id., 85); *Stevens* v. *Eno* (10 Barb., 95); 1 Pars. on Cont., 441; Story on Sales, § 296, *et seq.*; *Hutchinson* v. *Hunter* (7 Barr, 140); *Waldo* v. *Belcher* (11 Iredell, 609); Blackburn on Sales, 20; *Hanson* v. *Meyer* (1 East., 615); *Shepley* v. *Davis* (5 Taunt., 617); *Bush* v. *Davis* (2 M. & S., 397); S. C., 5 Taunt., 622, note; *Withers* v. *Iys* (4 Camp., 237); *Bailey* v. *Ogden* (3 Johns., 408, note *a*); *Suydam* v. *Clark* (2 Sand., 133); *Gardner* v. *Suydam* (3 Seld., 357.)

LOTT, J. The following are the material facts in this case, as found by the judge who tried the issues therein without a jury. The plaintiffs on the eleventh day of August, 1858, bargained with the defendants for the purchase from them of 400 bushels of corn, parcel of a cargo of corn from the schooner St. Helena, which was then stored in a warehouse in Oswego, known as the Empire elevator, at a price agreed upon, which was paid to the defendants, and they gave a bill of sale receipted therefor. The defendant Carrington owned two-thirds of the elevator, and the other third was owned by one Smith, and was in charge of Philander Rathbun. The corn was stored there for account of Luther Wright, and Rathbun was authorized to deliver it only upon the orders of Wright. The defendants, immediately after giving the receipt, drew an order upon Wright (calling him superintendent), and delivered it to him for the delivery to the plaintiffs of "four hundred bushels of corn from cargo, schooner St. Helena, account of same," (but of

which order the plaintiffs had no knowledge till the trial of the action), and upon such delivery thereof, Wright gave the defendants an order in the following terms:

GENERAL SUPERINTENDENT'S OFFICE, }
Oswego, *Aug.* 11, 1858.              }

*To Empire Elevator :*

Deliver to R. & McCarthy four hundred bushels of corn, from cargo of St. Helena, taking a receipt for the same.
400 bushels.

L. WRIGHT,
*Superintendent.*

This order was delivered by the defendants to the plaintiffs, who left it with their agents, with instructions to deliver it to the master of the schooner Northerner on her arrival at Oswego.

When the said bargain was made, the plaintiffs informed the defendants that they wanted the corn to make out a cargo of 2,000 bushels, and that they wished it to ship by the said schooner, which would arrive at Oswego in about two days from that time, but she did, in fact, arrive on the next day at between ten and twelve o'clock in the afternoon.

On the following morning, and before the presentation of the order given by Wright, the elevator was consumed by fire, and its contents, including the corn in question, were destroyed or greatly damaged, without fault or negligence of the defendants. The 400 bushels of corn were in no way separated from the rest of the cargo of the St. Helena, and remained in the elevator, until its destruction by fire as above stated.

The master of the Northerner subsequently presented the order of Wright to the defendants, and demanded the 400 bushels of corn on behalf of the plaintiffs, but the defendants refused to deliver that corn, or any other corn to the plaintiffs, by telling them they "must call on the association; that the defendants had nothing to do with the corn, and that the corn had been damaged and destroyed;" but they "did not in any way refuse to deliver the corn."

HAND—VOL. III.    16

The judge upon these facts found as conclusions of law, that the sale of the corn was not consummated; that the contract for the sale remained executory; and the defendants having failed to deliver the corn, the plaintiffs were entitled to recover the price paid therefor, with interest from the time of such payment, and ordered judgment therefor.

At the close of the testimony, the defendants requested the judge to find that the sale of the corn in question was complete and perfect upon the receipt by the plaintiffs of Wright's order and the bill of sale and the payment of the purchase money, and also that the giving of the said order by the defendants on Wright and the acceptance from them by the plaintiffs of his order on the elevator, was, in law, a delivery of the said corn to the plaintiffs. Each of those requests was refused, and proper exceptions to such refusal, and also to the several conclusions of law by the judge, were properly taken.

The material question arising thereon is whether the title to the corn in question had passed to and become vested in the plaintiffs at the time of the fire.

It must, in our opinion, be deemed to have been established by the decision in *Kimberly* v. *Patchin* (19 N. Y. Rep., page 330), as well expressed in the head note thereto, that "upon a sale of a specified quantity of grain, its separation from a mass, undistinguishable in quality or value, in which it is included, is not necessary to pass the title when the intention to do so is otherwise clearly manifested."

In that case, the owner of wheat lying in his warehouse sold 6,000 bushels thereof for a specified price, and gave to the purchaser a receipt that he had received it in store for him, subject to his order, but it was never separated from the residue thereof, and was never, in fact, delivered to him. The vendor afterward sold the whole to the plaintiffs in the action, and they claimed title under their purchase, and the question involved was which purchaser had the superior title. COMSTOCK, J., in giving the opinion of the court, says that the first sale was not in bulk, but precisely of the 6,000 bushels,

and on that ground it was claimed by the plaintiffs that, although the parties intended a transfer of the title to the purchaser, the law overruled that intention, although expressed in plain written language entirely appropriate to that purpose. He then, after an elaborate examination of the question on principle and conflicting authorities, comes to the conclusion that, in relation to grain and property of that nature, " when the quantity and general mass from which it is to be taken are specified, the subject of the contract is thus ascertained, and it becomes a possible result for the title to pass if the sale is complete in all its other circumstances;" and that none of the cases go to the extent of holding that a man cannot, if he wishes and intends so to do, make a perfect sale of a quantity, without an actual separation, where the mass is ascertained by the contract, and all parts of the same value and undistinguishable from each other ; and it was held that the intent to vest the title to the whole in the first purchaser was evinced by the seller's receipt declaring that the property was held subject to his order, and that he acquired a perfect title thereto.

Upon the application of the principle established in that case to the facts in this, there appears to be no valid ground for questioning the plaintiffs' title to the corn in question. It is true that there was no express declaration given by the defendants that they held it subject to the plaintiffs' order, but the intention to vest them with the title appears to be clear and unquestionable. It is shown that the plaintiffs informed the defendants, at the time of making the bargain for the purchase, that they wanted the corn to make up a cargo of 2,000 bushels, to be shipped by the schooner Northerner, which was expected to arrive in about two days from that time, and what was done was sufficient to enable them to obtain its delivery without any further application to the defendants. The order of Wright was effectual for that purpose. None other would have been available. The corn was stored for his account, and it is expressly found that Rathbun, who had charge of the elevator, was authorized to

deliver it only on the order of Wright. When, therefore, that was obtained by the defendants, on their written request to him to make such delivery, they, on giving it to the plaintiffs, lost all control over the corn, and he, from that time, may be considered their bailee; but if he did not hold that relation to them, they were entitled, on the presentation of his order, to the possession of the property, and could have enforced its delivery after a demand and a refusal. These views are entirely consistent with the rule laid down by Mr. Parsons (in 1 Parsons on Contract, 3d ed., page 441), cited by the defendants' counsel, where he says: " The sale is not completed until the happening of any event expressly provided for, or so long as anything remains to be done to the thing sold to put it in a condition for sale, or to identify it or discriminate it from other things, or determine its quantity if the price depends on this, unless this is to be done by the buyer alone;" and the court below, in the prevailing opinion, says : " The general rule on the subject is sufficiently expressed in the proposition that, when anything is to be done by the vendor in order to ascertain the value, quality or quantity of the goods sold, the delivery is not complete and the property does not pass to the vendee. So long as anything remains to be done to put the article or commodity sold in a condition for sale, or to discriminate it from other things with which it is intermixed, or to determine the price when that is dependent upon the quantity, the sale is not completed."

The rule referred to, both by Mr. Parsons and the court below, is not applicable where the vendor is not to do the thing required, and it is said in note (*t*), to the rule laid down by Mr. Parsons: " It is held that, if the parties intended that the sale should be complete before the article is weighed or measured, the property will pass before this is done." The bill and receipt are evidence of such an intent. A receipt admits that a sale has been had, and it is an acknowledgment of a past sale. This principle was asserted by Wright, J., in *Filkins* v. *Whyland* (24 N. Y. Rep., 341) ; and in the

absence of a finding that anything further was to be done by the defendant, the presumption is, that it was a perfect and complete sale.

The above considerations lead us to the conclusion that the sale of the corn was consummated, and that the transaction was not merely an executory contract.

Assuming that to be the true construction of the dealings between the parties, it follows that the title to the corn had passed to and become the property of the plaintiffs. The fact that there had not been an actual delivery of it is not material. That, Judge COMSTOCK says, in the opinion referred to, at pp. 333, 334: "is not indispensable in any case to pass a title, if the thing to be delivered is ascertained, if the price is paid or a credit given, and if nothing further remains to be done in regard to it;" and in *Terry* v. *Wheeler* (25 N. Y. Rep., 520), it was expressly held that a delivery was not necessary.

In that case, the vendor of a pile of lumber, which was selected and paid for, agreed to deliver it free of cartage at a railroad station, but before its delivery it was accidentally destroyed by fire, and the assignee of the purchaser sued to recover the purchase money. It was held, Judge SELDEN giving the opinion, that the title was in the vendee, citing in support of the decision, Chitty on Contracts (8th Am. ed., p. 332), and *Olyphant* v. *Baker* (5 Denio, 382), and said: "Where the sale appears to be absolute, the identity of the thing fixed, and the price for it paid, I see no room for an inference that the property remains the seller's merely because he agreed to transport it to a given place. I think in such case the property passes at the time of the contract, and that in carrying it, the seller acts as bailee, and not as owner."

It follows, from the views above expressed, that the decision of the judge on the trial was erroneous, and that the judgment entered thereon, and of the General Term in affirmance thereof, should both be reversed and a new trial ordered, costs to abide the event.

SMITH, FOSTER, INGALLS and SUTHERLAND, JJ., concur with LOTT for reversal.

GROVER, J., was also for reversal, on the authority of *Kimberly* v. *Patchin*, solely.

HUNT, J., and EARL, Ch. J., for affirmance.

Judgment reversed and new trial granted.