63  553
85  502

LUCIUS L. MORRISON *vs.* JAMES B. DINGLEY *et al.*

*Sale—When separation and delivery are necessary.*

Wallace bargained to the plaintiff one hundred and twenty-five tons, *gross*, of coal, parcel of a cargo of about double that number of tons. The rest of it was sold to the defendants. After the plaintiff's teamster had taken from the wharf—upon which the whole cargo had been discharged, in an indistinguishable mass—one hundred and twenty-five tons, *net*, the defendants interposed, and prevented the removal of any more of it, claiming that they should first take therefrom the same quantity that the plaintiff had received, and that the balance then remaining (if any) should be divided between the parties; *held*, that the plaintiff had acquired no such title to any portion of the coal remaining unweighed upon the wharf, as to enable him to maintain trover against the defendants.

MOTION FOR A NEW TRIAL.

TROVER for the conversion of fourteen tons of coal. In the summer of 1869, Mr. Morrison wrote from Skowhegan to Wallace & Co., coal merchants of Boston, for a small cargo, of one hundred and twenty-five gross tons, of Cumberland coal. Not readily finding a vessel of suitable size for this quantity, they shipped from Baltimore to Gardiner, per brig Waredale, July 8, 1869, two hundred and fifty tons of that coal, consigned to their own order. They sent a bill of the whole to Mr. Morrison, which he

declined to accept, and on the eighteenth day of August, 1869, they made out a new bill for the one hundred and twenty-five tons, which he paid.   July 22, 1869, Mr. Morrison wrote to Bartlett & Wood of Gardiner, in response to some telegram from them not put into the case, that this bill for two hundred and fifty tons had been sent him, but that he only wanted one half, one hundred and twenty-five tons; that he did not design to assume the balance, but if it could be disposed of should be glad to oblige Mr. Wallace, concluding his letter with this sentence : "They can give me two thousand two hundred and forty pounds to the ton, or weigh all and divide loss or gain."   Upon its arrival the cargo was discharged in one heap upon Gay's wharf.   The plaintiff employed the teams of one Potter to draw his portion of the coal from the wharf to the cars, by which it was to be taken to Skowhegan.   When one hundred and twenty-five tons, net, had been delivered at the cars, the defendants forbade Mr. Potter hauling any more for Morrison until they had taken the same quantity, when the balance could be divided ; and directed Potter to dump the load then upon his cart in their cellar, which he did. The difference between a hundred and twenty-five net tons, of two thousand pounds each, and the same number of gross tons, of two thousand two hundred and forty pounds each, would be between thirteen and fourteen gross tons, or just fifteen net tons. It is the value of this difference which this action was brought to recover.   After his teamster was stopped, as aforesaid, Mr. Morrison had no more of the coal, and there was one witness called by the plaintiff who testified that the defendants offered to sell him all that remained upon the wharf.   It appeared that some inconsiderable portion, more or less, of it was swept from the wharf by a freshet in October, 1869.

The defendants made their trade for their part of this coal with Bartlett & Wood, who acted as brokers, and who passed the money paid by the Dingleys to Wallace & Co., deducting ten per cent. brokerage commission for effecting the trade; but the defendants contended that their purchase was under, and accord-

ing to the terms of, the plaintiff's letter to Bartlett & Wood, and that their election was "to weigh all and divide loss or gain," instead of allowing him one hundred and twenty-five tons gross weight ; and that so much of the coal as had not been weighed remained undisturbed upon the wharf when the suit was brought, Sept. 3, 1870.

The verdict was for the plaintiff, and the defendants ask to have it set aside as against law and evidence. Exceptions were also filed, but they involve no question which requires a statement of them.

*S. D. Lindsay*, for the defendants.

*H. & W. J. Knowlton*, for the plaintiff.

APPLETON, C. J. This is an action of trover for the alleged conversion, by the defendants, of a quantity of coal belonging to the plaintiff.

It is in proof that on the eighth day of July, 1869, the firm of William Wallace & Co., shipped from Baltimore, Md., to Gardiner, Maine, consigned to their own order, two hundred and fifty tons of coal. The coal arrived at Gardiner, and was there sold to the parties to this suit.

The defendants claim that they purchased half of the cargo, and the plaintiff half; that the coal was left on Gay's wharf in bulk, in one pile; that no division was made, while it so remained on the wharf; that the mode of division agreed upon was, that each was to take one hundred and twenty-five tons net from the pile, and the remainder was to be equally divided between them ; that the plaintiff took over one hundred and twenty-five tons net, and the defendants one hundred and twenty tons net and some odd pounds. Upon this state of facts it is obvious that the plaintiff, who has received more than his share, cannot recover anything of the defendants, who have had less than their share.

According to the plaintiff's statement of the case, he was to have one hundred and twenty-five tons *gross*, and, after he had

had that amount, the defendants were to have the same quantity, if so much remained. But the plaintiff was to have precedence.

The coal, while in bulk and remaining on the wharf, and before it was weighed and delivered, was the property of William Wallace & Co. There was weighed and delivered to the plaintiff one hundred and twenty-five tons *net.* With this coal, the defendants have no right to interfere. The residue of the coal, until it was weighed and delivered, belonged to the shippers.

It is a fundamental principle, pervading everywhere the doctrine of sales of chattels, that if goods be sold by number, weight or measure, the sale is incomplete, and the risk continues with the seller, until the specific property be separated and identified. 2 Kent's Com., 496. While the coal remained in bulk, and before separation and weighing, there was no specific portion, which belonged to the plaintiff. The title did not vest in him until a separation had taken place. Such seems to be the uniform result of the authorities on this subject. In *Rapelye* v. *Mackie,* 6 Cowan, 251, it was decided that when anything remains to be done, as between buyer and seller, or for the purpose of ascertaining either the quantity or price of the article sold, there is no delivery, and the property does not pass, though the price be in part paid; and that, if there be a part delivery, the other part, not yet ascertained, will not pass. The same doctrine was fully affirmed in *Scudder* v. *Worster,* 11 Cush., 573; and in *Houdlette* v. *Tallman,* 14 Maine, 400; *Bailey* v. *Smith,* 43 N. H., 141; *Gibbs* v. *Benjamin,* 45 Vt., 126. The cases, in which it has been held on a sale of a specified quantity of an article, as of grain, that its separation from a mass indistinguishable in quality or value, in which it is included, is not necessary to vest the title, have been determined upon principles not at all inconsistent with those already advanced. Thus in *Kimberly* v. *Patchin,* 19 N. Y., 330, the owner of wheat lying in a mass in his warehouse, sold a specified portion thereof for an agreed price, and executed to the vendee a receipt acknowledging himself to hold the wheat subject to the vendee's order, and the title was held

Morrison *v.* Dingley.

to pass to such vendee. The seller, by the terms of his agreement, constituted himself the bailee of the purchaser, and henceforth stood in that relation to him and to the property. Upon the same principle was the decision in *Waldron* v. *Chase*, 37 Maine, 414, where the owner of a large quantity of corn in bulk, sold a certain number of bushels therefrom, and received his pay therefor, and the vendee took away a portion, it was held that the property in the part sold, vested in the vendee, although it was not measured or separated from the heap.

But in the case at bar, the vendor gave no receipt for the coal, nor was there any payment therefor, nor any bill of sale given until August 18, 1869, which was long after the defendants had received their part of the coal. The vendors, Wallace & Co., could not be regarded as bailees of the plaintiff, for he had not paid them for the coal, nor had they given him any receipt by virtue of which they might be so regarded. Nor, indeed, had they even given him a bill of sale of the coal, before the quantity taken by the defendants had been weighed out to, and been removed by them.

The result is, that upon the facts as proved by the plaintiff, or by the defendants, the plaintiff has title only to the coal weighed out, and delivered to him, and to no more. The verdict, manifestly, was for coal, the title to which had not passed to the plaintiff.

*Motion sustained.*

BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.

DICKERSON, J., dissenting.

This is an action of trover to recover the value of the difference between one hundred and twenty five tons of coal gross weight, and the same number of tons net weight. The plaintiff received one hundred and twenty-five tons of the coal net, and was prevented by the defendants, as he claims, from removing the balance. The case is presented on a motion to set aside the verdict as against evidence, and the weight of evidence, and on exceptions.

In proof of his title to the fourteen tons of coal in controversy, the plaintiff testified that in May, 1869, he sent the firm of William Wallace & Co., coal merchants of Boston, an order to ship him a cargo of coal not exceeding one hundred and twenty-five tons; that in July following, they shipped a cargo of coal to Gardiner, sending him at the same time, a bill of two hundred and fifty tons, and a bill of lading for the same amount; that he declined to take more than he ordered; that they subsequently sent him a bill of one hundred and twenty-five tons; that he bought that amount at a stipulated price per ton, in July, commenced removing it immediately thereafter, and paid for it on the eighteenth day of August following, according to agreement. It further appeared in evidence that the coal was in bulk at Gardiner; that it was not re-weighed by the shippers, and that the plaintiff had removed, in all, one hundred and twenty-five tons net, by the last of September, when the defendants prevented his teamster from taking away any more of it. William P. Wallace, of the firm of William Wallace & Co., testified that he sold the plaintiff one hundred and twenty-five gross tons of coal, and that he directed his agent in Gardiner, who subsequently sold to defendants for him one hundred and twenty-five tons of the same cargo, "to see that Mr. Morrison gets one hundred and twenty-five tons gross."

The defendants denied that they prevented the plaintiff from taking more of the coal, and claimed that subsequently to the plaintiff's purchase, they bought one half of the cargo, consisting in all of two hundred and fifty tons; that their purchase was not made subject to the precedent right of the plaintiff to take away one hundred and twenty-five gross tons, and that the terms of division agreed upon were, that either party should take one hundred and twenty-five tons net, and then stop, until the other should take that amount, and that they should then divide the loss or gain. In other respects the evidence introduced by the defendants did not materially conflict with the plaintiff's evidence.

In returning a verdict for the plaintiff, the jury must have found that at the time of the alleged conversion of the coal by

the defendants, on the twenty-fifth day of September, 1869, the plaintiff was the owner thereof; and the question presented for determination, under the motion, is whether the evidence warrants such finding.

Mr. Long, in his treatise on sales, says: "Three particulars are included in a valid sale, namely, a thing which is the subject of it, a price and a consent of parties. . . . . . The thing sold must be specific, or ascertained; the price must be certain, or ascertainable by reference to some criterion by which it may be fixed; and there must be a consent of the parties upon the thing sold, upon the price, and upon the sale itself." The general and inflexible rule is that where, by the terms of the contract, anything remains to be done by both parties, or by either, precedent to delivery, the title does not pass; the contract is executory and incomplete, as a sale, and not executed and perfected. But, say the court in *Kimberly* v. *Patchin*, 19 N. Y., 333, "actual delivery is not indispensable in any case in order to pass the title, if the thing to be delivered is ascertained, if the price is paid, or credit given, and if nothing further remains to be done in regard to it." In other words, all the requisites of a valid sale may exist without a delivery. "In the case of sales where the property sold is in a state ready for delivery, and the payment of money, or giving security therefor is not a condition precedent to the transfer, it may well be the understanding of the parties," remarks Dewey, J., in *Riddle* v. *Varnum*, 20 Pick., 283, "that the sale is perfected, and the interest passes immediately to the vendee, although the measure, or weight of the articles sold, remains to be ascertained."

These principles of law applied to the facts in the case at bar make the sale of the coal sued for to the plaintiff executed and complete, and show the title thereto to have been in him at the time of its alleged conversion by the defendants. In view of the evidence in the case, it does not admit of denial that the parties to the alleged sale intended that the title to the coal should be transferred to the plaintiff; their mutual consent to the sale, the one to sell and the other to buy the coal, is unquestionable. The kind and quantity

of the thing sold were ascertained, the price was certain, a credit was given, and the amount was paid long before the alleged conversion. There was no agreement of the parties that anything further should be done by both or either of them to complete the sale. Nor did anything in fact remain to be done in order to ascertain the quantity, quality, price or value of the thing sold. Moreover, more than seventh-eighths of the coal bought by the plaintiff had been removed from the pile by him when the defendants interposed to prevent his taking away the balance. The contract has all the requisites of a completed sale.

Though the sale was of a certain number of tons of coal, the article was in bulk, undistinguishable from the surrounding mass from which it was bought. For this reason, it is argued that the coal was not sufficiently identified to pass the title to it, because it was not all weighed. But how could weighing the coal render the quantity sold more clear and unmistakable? The plaintiff bought one hundred and twenty-five gross tons; there was nearly twice that quantity in the heap out of which he made the purchase; weighing the coal could not increase or diminish the quantity bought; that was necessary, not to ascertain the quantity bought—which had already been done—but to determine when the plaintiff had taken from the pile the quantity that had been sold him. Nor was the weighing necessary to fix the price of the coal, since that also had already been agreed upon by the parties. If, as in *Simmons* v. *Swift*, 5 B. & C., 857, it had been agreed between the parties that the coal should be weighed by two persons, each party to name one, in order to fix the price, and this had not been done; or, as in *Gibbs* v. *Benjamin*, 13 Law Reg., 95, the parties had not agreed upon the quantity sold, a different result would follow—as the contract would not have been complete; but nothing of the kind occurred in the case at bar; the parties by the terms of the contract of sale, having fixed the quantity and price of the coal, these could be no better known or identified after the coal had been weighed than they were before. The plaintiff knew what he bought, and bought what he knew, before he weighed it.

Morrison *v.* Dingley.

While it is undoubtedly true that in order to pass the title, in a sale of chattels, the articles, if not delivered, must be designated so that possession can be taken by the purchaser without any further act of the seller, this rule, from the necessity of the case, must be applied according to the nature of the article, and is to be somewhat modified or relaxed, when the article is not sold by a description of the characteristics which distinguish that particular thing, but by weight, measure, count, number or mark, as corn, coal, oil, flour, or lumber lying in bulk, especially where the parties obviously intended to transfer the title. In such case, an actual delivery is impracticable unless the whole is transferred to the purchaser, or the specified quantity sold. "As it is not possible," says Comstock, J., in *Kimberly* v. *Patchin, ante,* "in reason and philosophy to identify each constituent particle composing a quantity, so the law does not require such identification. Where the quantity and the general mass from which it is to be taken are specified, the subject of the contract is thus ascertained, and it becomes a possible result for the title to pass, if the sale is complete in all its other circumstances."

It has been seen that in the case at bar the "sale was complete in all its other circumstances." It is the same in principle with *Waldron et al.* v. *Chase,* 37 Maine, 415. In that case, the corn was paid for when the sale was effected; in this case, that was done in the first instance which was equivalent to payment—a credit was given, and the whole amount was paid for according to agreement a long time before the alleged conversion by the defendants; in both cases a part of the article sold was separated by the purchaser from the surrounding mass. In that case it was held that where the owner of a quantity of corn in bulk sells a certain number of bushels therefrom, and receives his pay, and the vendee takes away a part, the property in the part sold vests in the vendee, although it has not all been measured or separated from the heap.

The court in that case expressly recognized the fact that there is a conflict of authorities, both English and American, upon this sub-

Morrison *v.* Dingley.

ject, and adopted the rule which is most consonant with principle and the weight of authority. That case was decided before the case of *Scudder* v. *Worster et al.*, 11 Cush, 580, was reported, and before the opinion was rendered in *Ropes et al.* v. *Lane*, 9 Allen, 502. The principle upon which these decisions rest is clearly irreconcilable with the doctrine of *Waldron et al.* v. *Chase*. In the former cases, it was held that not even payment for the whole of the property sold in bulk, and a separation of a part thereof, will transfer the title to the vendee in the part not thus separated, while in the latter case these facts serve to vest the title to the whole property in the vendee, as well that which has not, as that which has been separated. We regard the question as *res judicata* in this State. In view of the conflicting decisions upon this subject our court adopted the rule of the early English cases, and of the court in New York, and I am unable to see anything in the reasoning of the more recent cases in Massachusetts to change that rule.

Our conclusion is that the jury were authorized by the evidence in finding that all the requisites of a valid sale of one hundred and twenty-five tons gross by the owner to the plaintiff had been complied with, and that the title to that amount was vested in him when the defendants interposed to prevent his removing the balance of that quantity. The assertion and acts of ownership on the part of the defendants in respect to all the coal remaining in bulk, and especially their refusal to allow the plaintiff's teamster to remove more of it, make out a clear case of conversion.

I do not understand that the learned counsel for the defendants seriously controverted the correctness of the instructions to the jury. However this may be, he has no legal ground of complaint, as they were quite as favorable to the defendants as the law of the case admits.