## JOHN HIRES v. WILLIAM HURFF.

1. The property in a chattel passes according to the intention of the parties. That is a question of fact for the jury, unless it is plain by admitted facts, that the law will justify a finding but one way.
2. Where there is a contract for the sale of a smaller quantity of goods from a greater mass of like quality (corn), which remains in the possession of the seller, without selection or appropriation, the contract is executory, and the property does not pass, unless there be a clearly-expressed intention to make the sale absolute.

On error to Gloucester Circuit Court.

This was an action of trover, brought by the sheriff of Salem county, John Hires, to recover the value of two hundred bushels of corn, under the following circumstances: In November, 1873, George W. Heritage was the owner of about five hundred bushels of corn, in bulk, and sold two hundred bushels of the same to William Hurff, who paid cash. By the verbal terms of the sale, the two hundred bushels of corn were to be retained by Heritage until they were in a condition to keep well, and then to be by him delivered to Hurff. January 2d, 1874, the sheriff, John Hires, under an execution against Heritage, issued out of the Circuit Court, levied upon the five hundred bushels of corn, which still remained, in bulk, in the actual possession of Heritage. Soon after the

levy on the corn by the sheriff, Heritage delivered to Hurff two hundred bushels, according to their agreement, and the action was brought by the sheriff against Hurff to recover the value of this corn, after demand made of him and refusal to re-deliver the same.

Upon these facts, proven by the testimony of both Heritage and Hurff, the defendant's counsel requested the court to charge the jury that if Hurff and Heritage, at the time of the sale of the corn, intended and understood the sale to be complete, that then the property passed, at that time, to Hurff, and the plaintiff could not recover its value for his refusal to return it after it was separated and delivered to him by Heritage. The court refused so to charge and instructed the jury that notwithstanding Hurff bought and paid for two hundred bushels of Heritage's corn before there was any levy upon it by Sheriff Hires, yet as it appeared that it was in bulk with other corn, and not separated at the time of the sale, or prior to the levy by the sheriff, no property in the corn passed to Hurff, but remained in the defendant in execution, was bound by the levy of the sheriff subsequently made, and that the defendant was liable to the sheriff for the value of the corn delivered by Heritage to him after such levy.

The defendant's counsel excepted, and this writ of error was brought.

Argued at February Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the plaintiff in error, *D. J. Pancoast.*

For the defendant in error, *H. L. Slape.*

The opinion of the court was delivered by

SCUDDER, J. The particulars above given appear in the parol evidence of Heritage, the seller, and Hurff, the buyer, both of whom were examined, and agree in their statements. The facts being admitted, the single question is presented,

whether there was any evidence from which the jury might infer that the parties to the contract for the sale of the two hundred bushels of corn, intended that the sale should be complete and executed, or whether, upon the admitted facts, the sale was incomplete and the contract merely executory.

This question is so important in its relation to the business of merchants and others in buying and selling the various commodities which are the objects of trade, that it is not strange there should be many conflicts and nice distinctions found in the books in determining the rights of the parties.

It is desirable that the law affecting sales should be as fixed and well defined as the nature of the case will admit, that all may know it and deal securely with reference to such law. Yet there is scarcely a subject in the law which conflicting decisions have left in greater uncertainty.

The ordinary rule is, that the property in a chattel passes according to the intention of the parties. In determining such intention in a contract of sale, it is admitted that it is a question of fact for the jury, under proper instructions, and must be submitted to them, unless it is plain, as matter of law, that the evidence will justify a finding but one way. *Merchants' Nat. Bank* v. *Bangs*, 102 *Mass.* 291; *De Ridder* v. *McKnight*, 13 *Johns.* 294.

It was held by the court below that the evidence in this case will justify a finding but one way, and they so instructed the jury. Was this charge correct?

It is a fundamental principle pervading everywhere the doctrine of sales of chattels, that if goods be sold by number, weight or measure, the sale is incomplete, and the risk continues in the seller until the specific property be separated and identified. 2 *Kent's Com.* 496.

It does not alter the principle that the payment for the goods has been made in whole or in part; nor that they are unfit for delivery at the time of sale. To overcome the presumption that the sale is incomplete and executory, there must be some further act of the parties to express the intention that the title shall be complete and executed. There must be some

delivery, or attempt at delivery, some separation, or attempt at separation, or some clearly-expressed purpose, to show that in the minds of the parties, the sale was executed; otherwise, under the rule above stated, the sale is incomplete.

A brief consideration of some of the cases will show that this principle is firmly established, and its admission will reconcile much of the apparent conflict between them. I know no better statement of it than that made by Bayley, J., in *Gillett* v. *Hill*, 2 *C. & M.* 530, in these words: "Where there is a bargain for a certain quantity *ex* a greater quantity, and there is a power of selection in the vendor to deliver which he thinks fit, then the right to them does not pass to the vendee until the vendor has made his selection, and trover is not maintainable until that is done. If I agree to deliver a certain quantity of oil, as ten tons out of eighteen tons, no one can say which part of the whole quantity I have agreed to deliver until a selection is made. There is no individuality until it has been divided."

In *Scudder* v. *Worster*, 11 *Cush.* 573, two hundred and fifty barrels of pork were sold, part of a larger lot, all of the same quality, having the same marks, and all stored in the vendor's cellar, but no separation was made. The purchasers gave their negotiable promissory notes in payment of the barrels bought. It was held that as there had been no possession on the part of the purchaser, and no separation of the barrels from a larger mass of articles similar in kind, and no descriptive marks to designate them, that no title passed. Many cases are reviewed and distinguished in the opinion of the court.

Mr. Benjamin, in his Book on Sales, (§ 354,) says, that the only case to be found in the reports in apparent contradiction to this principle of the law of sales, is *Whitehouse* v. *Frost*, 12 *East* 614. He adds that this case, notwithstanding explanations by the judges who took part in the decision made in subsequent cases, is scarcely ever mentioned without suggestion of doubt or disapproval.

But that case differs from the one we are considering, in

that the purchaser of the forty tons of oil, in bulk, sold to a third person and gave an order for delivery, which was accepted; while here it was expressly agreed there should be no delivery or separation until a future time. The oil was also in the custody of another, and not left in the possession of the seller, as in this case.

Whitehouse v. Frost has been followed by several cases in this country. *Kimberly* v. *Patchin*, 19 *N. Y.* 330, is one often cited. Here there was a sale of six thousand bushels of grain from a greater quantity. A written receipt was given for the six thousand bushels sold from a greater quantity in store, subject to the order of the purchaser free of all charges on board. There was a bill of sale and a writing that the seller held as bailee of the purchaser. The case was decided upon the principle that where the parties to a sale of goods so situated, expressly declare an intention to change the title, there is no legal impossibility in the way of that design.

*Foot* v. *Marsh*, 51 *N. Y.* 288, states the distinction between that case and Kimberly v. Patchin. There was an agreement for a sale to the plaintiffs of one hundred barrels of oil, by the sample then exhibited, for which the plaintiffs were to give their note at three months, and as the barrels contained different quantities, in order to ascertain the amount for which the note should be given, it was agreed that each barrel should contain an average of forty gallons, in all four thousand gallons, and that they should be subject to twenty shillings storage until called for. When the plaintiffs called for the oil the defendants delivered one hundred barrels, containing eighteen hundred and eighty-one gallons. The diminution was caused by leakage. In an action to recover the deficiency, it was held that the contract was executory, not executed, and the plaintiffs could recover the amount specified in the contract.

In *Russell* v. *Carrington*, 42 *N. Y.* 118, there was a sale of part of a cargo of grain stored in an elevator. *Cushing* v. *Breed*, 14 *Allen* 376, is a similar case. In both it was held that the order on the superintendent, or person in charge of

the elevator, to hold and deliver the grain subject to the order of the purchaser, manifested an intent to pass the title, and rendered the transaction an executed contract, without actual separation or delivery of the property. The grain was not in the actual possession of the seller, but of his agent; the order upon the agent and acceptance by him was all the delivery that could conveniently be made, and the grain, after the order was given and accepted, was not in the possession or under the control of the seller; nor was there anything further for him to do. In the latter case, the distinction is well stated between that and the class of cases where the vendor himself retains the possession, because there is something more to be done by him, such as measuring, weighing or marking, as where an entire bulk is delivered to the vendee in order that he may make the separation himself. It was also said in this case, that a tenancy in common resulted from the method of storing in the elevator, which had been agreed upon by the parties, and superseded the necessity of measuring, weighing or separating the part sold. The peculiar position of grain in elevators, the mixed property of different owners stored in large quantities, the convenience and necessity of selling while in storage for future shipments and for advances, may require some modification by custom of the rule that has been applied to ordinary cases of sales of smaller quantities from the mass.

*Chapman* v. *Shepard*, 39 *Conn.* 413, goes to the extent that the rule of law, that upon the sale of a portion of a large bulk, the contract remains, in judgment of law, executory until the portion sold is severed and separated for the purchaser from the mass, is limited to cases where the articles differ from each other in quantity, quality or value, so that they must be selected to be distinguished, and does not apply to cases of sales of part of an ascertained mass of uniform quality and value. See also *Waldron* v. *Chase*, 37 *Me.* 414, which is qualified and distinguished in the later case of *Morrison* v. *Dingley*, 63 *Me.* 553, where the simple fundamental rule applicable to sales of chattels not specific is clearly asserted.

In our state the general principle was incidentally referred to in *Thompson* v. *Conover*, 3 *Vroom* 466, and more directly in *Boswell* v. *Green*, 1 *Dutcher* 390. In the latter case there was a sale by debtors to a creditor of all their coal lying upon a wharf, by a bill of sale, an order for delivery accepted, and possession given by the wharfingers prior to a levy by the sheriff at the suit of other creditors. This sale was clearly completed within all the cases that have been cited. A like case is *Macomber* v. *Parker*, 13 *Pick.* 175.

The conclusion to which all the cases tend is, that where there is a contract for the sale of a certain quantity of goods in general, a smaller from a greater quantity in bulk, without a special identification of them or an appropriation of them to the contract, it is an executory agreement, and the property does not pass until such appropriation is made, unless there be a clearly-expressed intention to make the sale of the articles complete and absolute. *Campbell* v. *Mersey Docks*, 14 *C. B.* (*N. S.*) 412; *Aldridge* v. *Johnson*, 7 *E. & B.* 885; *Young* v. *Matthews*, *L. R.*, 2 *C. P.* 127; *Martineau* v. *Kitching*, *L. R.*, 7 *Q. B.* 436; *Riddle* v. *Varnum*, 20 *Pick.* 280; *Keeler* v. *Goodwin*, 111 *Mass.* 490; 1 *Pars. on Cont.*, § 527; *Story on Sales*, § 352, &c.; *Hilliard on Sales*, 135–147; *Benjamin on Sales*, §§ 310, 334, 352, &c.; 2 *Schouler's Pers. Prop.* 244, &c.

In the present case, the two hundred bushels of corn were to remain in bulk, and an undistinguished part of the five hundred bushels, until they were hardened; then they were to be weighed or measured and delivered by the vendor to the vendee. There was no bill of sale, no receipt, no delivery, no statement as to whose should be the risk, no special appropriation, no fact but payment to indicate a purpose to make an immediate and absolute sale of the corn. There were, therefore, no facts in the case from which a jury could legally infer that the contract was complete in law.

The judgment of the Circuit Court is affirmed.