# THE

# TEXAS LAW REPORTER

## AUSTIN, TEXAS, JULY, 1883.

### MARSHALL WELLS v. GEO. W. LITTLEFIELD.

*Sale of Personal Property—Intent.*—The general principle regulating sales of personal property, that where anything remains to be done to the thing sold to discriminate or identify it from other things, the sale is not complete, is subject to many qualifications—as that the intention of the parties when ascertained will generally determine the contract; as that when possession is given the buyer and the act necessary for the designation of the article sold is to be done by him and not by the seller, the title would pass absolutely. See this case for illustration of both exceptions.

*Bill of Sale—Cattle—Statute Construed.*—The penalty for not taking a bill of sale upon receiving possession of cattle as required by Art. 4562, is that the possession is *prima facie* illegal, and not conclusively unlawful. The title to such property passes without such bill of sale, if it can be proved that it was *bona fide* and upon sufficient consideration, and that no evasion of the law was intended.

*Notice—Purchaser.*—A purchaser of cattle which at the time of sale are in possession of another is affected with notice of the rights of such possessor, to a knowledge of which inquiry would have led him.

Appeal from Lampasas County.

This suit was instituted in the district court of Lampasas county, by the appellee, Geo. W. Littlefield, against the appellant, Marshall Wells, for the recovery of 1018 head of cattle, branded with a bar or rail, thus: I on the left shoulder, of which plaintiff claimed to be the owner, and which were alleged to have been taken possession of and unlawfully withheld by defendant. Plaintiff prayed for and obtained a writ of sequestration. The petition was filed on November 22nd, 1881, and alleged the average value of the cattle to be $9 80 per head, and the aggregate value to be $10,000.

On May 1st, 1882, the defendant, Wells, filed his answer in which he plead :

1st. The general denial.

2nd. That on August ——, 1881, L. A. Mosty and R. E. McAnulty were doing business as partners in buying and selling cattle, and were such partners until about November 1st, 1881. That during said partnership, in payment for cattle the said Mosty executed and delivered to defendant, Wells, his promissory note for $4,300, dated August 20th, 1881, payable 30 days after date and drawing 10 per cent. per annum interest. That said cattle were bought and used by said partnership and that by agreement between Mosty and McAnulty the debt due defendant was to be considered as a partnership debt; that the business of said partnership was done in the name of L. A. Mosty; that said note has never been paid except as elsewhere stated in said answer. That afterwards said Mosty authorized and instructed defendant to go to Denton county, Texas, and get and drive 1018 head of cattle to Lampasas county, and hold the same until he, the defendant Wells, could select therefrom a sufficient number at the price said Mosty had paid for same, to pay off said note and interest. That the price paid by said Mosty for said 1018 head of cattle was $8.00 per head. That relying on said promise of said Mosty, he, said defendant Wells, went to said Denton county, and at great expense and trouble drove said cattle to Lampasas (which cattle are the same described in plaintiff's petition) and was holding the same and waiting for the arrival of said Mosty and McAnulty to make his selection therefrom and deliver the balance to said Mosty and McAnulty, when the cattle were seized and taken from the possession of defendant by the sheriff of Lampasas county, by virtue of the writ of sequestration sued out in this cause. That if plaintiff ever acquired any right to said cattle the same was acquired from said Mosty and McAnulty after defendant had taken possession of same under his said agreement.

Defendant also by his answer asked that said Mosty and McAnulty be made parties to the suit, that said cattle be ordered returned to defendant to enable him to select a sufficient number at $8.00 per head to pay off his said debt, or that said cattle be decreed to be sold for the satisfaction of said debt, or in the event it should be found that said cattle have gone into the possession of plaintiff, and been removed beyond the jurisdiction of the court, then that defendant have judgment against said plaintiff, and the sureties on his replevin bond for the amount of principal and interest due on said promissory note. Defendant further prayed for general relief.

Plaintiff filed exceptions and general denial to defendant's answer.

On May 22nd, 1882, the case was tried by the court without a jury, and judgment rendered in favor of plaintiff, that he have and retain from defendant the possession of the cattle, that plaintiff be quieted in his possession, &c., the judgment reciting that the cattle were taken from the possession of defendant by the sheriff of Lampasas county by virtue of a writ of sequestration issued in this cause, that defendant failed to replevy the cattle and they were delivered by said sheriff to plaintiff, he giving his replevin bond therefor.

Motion for new trial overruled and defendant appealed.

*A. G. Walker* and *Matthews & Wilkes*, for appellant.

*Fisher & Fisher* and *Walter Acker*, for appellee.

Opinion by Willie, C. J.

It is a general principle of the law regulating sales of personal property, that when anything remains to be done to the thing sold to identify it or discriminate it from other things, the sale is not complete. 1 Pars. on Con., 527; Blackburn on Sales, 152; Benjamin on Sales, § 311*a*, 319. This rule admits of many qualifications, and if the clear intention of the parties is that the property shall pass, notwithstanding something remains to be done to it before it is definitely ascertained, the sale will be considered executed. Benj. on Sales, § 311. It seems, also, that where possession is given to the buyer and the act necessary for the designation of the articles sold is to be performed by him and not by the seller, title would pass absolutely to the purchaser. 1 Pars. on Con., 527; Tarling v. Baxter, 6 Barn. & Cress., 360; Russell v. Carrington, 42 N. Y., 124; Blackburn on Sales, 152; Benjamin on Sales § 358; Page v. Carpenter, 10 N. H., 77. In the last cited case a quantity of goods were constructively delivered to the buyer with the understanding that if they were not more than he had bargained for, he might keep them all, if they were more, the seller was to have the balance. A creditor of the vendor attached the remainder of the goods after a small portion of those purchased had been set apart by the buyer. The court held that the contract was executed, and not executory, and that portion of the goods which had been included in the bargain was not liable to attachment for the debts of the seller. The reason of the general rule seems to be that it is for the benefit of the

vendor that the property should pass, because the risk of loss is thereby transferred to the purchaser, whilst the vendor retains possession to secure payment of the price. Where the agreement, therefore, is that he is to do something, before he can compel the purchaser to accept the goods, the intention of the parties should be taken to be that the vendor was to do this before he obtained the benefit of the transfer of the property. Blackburn on Sales, 152. Says the above writer in continuation : "The presumption would be unreasonable when the acts were to be done by the buyer, who would thus be rewarded for his own default." Ib., 153. It is the intention of the parties that the law endeavors to arrive at, and when that is ascertained, it will generally determine the nature of the contract. We find in this case that the cattle had been actually delivered into the possession of the purchaser. The purchase money was virtually paid, as the debt for which the cattle were to be taken was in effect extinguished by his agreement to take a portion of them in payment of it, and receiving them into his possession under that agreement. He had partly performed his part of the contract by driving the cattle from Denton county to the place where the selection of his portion of them was to be made. Nothing was left for the seller to perform in order to complete the sale, and it would be unjust to make him liable for loss that might accrue to the property thus placed in charge of the buyer, because of any delay or neglect on the part of the latter to make the appropriation of his share of it, as he was bound to do by the agreement.

It would be permitting the purchaser to take advantage of his own wrong, if upon a destruction of the property in his possession he could say, I have not done what I was bound to do under my contract, and hence the seller who has done all that he agreed to do must suffer the consequences. This case is a stronger one than that cited from New Hampshire. There the goods were not actually but only constructively delivered into the keeping of the purchaser; here they were in his manual possession, and the seller had no possible opportunity of exercising control over them, and should not be charged with responsibility for their safety. If not thus chargeable he cannot be entitled to any benefit from them. It cannot be allowed that one should reap all the benefits of such a condition of things, and not be subject to its disadvantages. We think that in this case Wells was liable for all losses or damages that might occur

to the cattle in his possession, to the extent of his interest in them; and hence was entitled to all the advantages to be derived from their ownership. Some stress is laid upon the fact that no bill of sale accompanied the delivery of the cattle to the appellant, as required by Art. 4562 Rev. Stat. The penalty for not taking such a written instrument upon receiving possession of cattle is that the possession should be deemed *prima facie* illegal. Ib., Art. 4563. It is not made conclusively unlawful, but is open to explanation; and nothing prevents a title to such property from passing without a bill of sale, if it can be proved that it was *bona fide* made, upon sufficient consideration, and that no evasion of the law was intended.

In this case such proof was clearly made, and Wells was shown to be in the possession of the cattle under a just and legal title, holding under a delivery to him by the agents of their former owner, by virtue of a written order to them from such owner, and that he had paid a full consideration for them, Wells being thus in possession of the cattle at the time they were sold to Littlefield, the latter was affected with notice of his rights and of every thing in regard to Wells' claim, to a knowledge of which an inquiry would have led him. Such inquiry would have informed him of all the facts and circumstances which we have detailed as showing title in Wells, and appellee can therefore set up no claim as an innocent purchaser of the property. But there is another view of the transaction between Mosty and Wells equally decisive of this case in favor of the appellant. Admitting that there was no complete sale effected, by reason of the facts proven on the trial, the agreement between Mosty and Wells constituted appellant at least an agent of the former to receive the cattle from Knight and Dawson, bring them to Lampasas county, and then take out his own share of them, and deliver the balance to Mosty, so soon as that contract was completed, and the cattle delivered under it to Wells, and thereby his debt against Mosty became extinguished. If not the part owner, he became at least the agent of Mosty to the things his contract bound him to perform; he became interested in the subject matter of his agency; he was invested with a right in the thing about which it was to be exercised. The contract resulted in conferring upon Wells a power coupled with an interest which the subsequent sale by his principal did not revoke. Hunt v. Rousmanier, 8 Wheat, 174; Walker v. Denison, 86 Ill., 142.

Ch. J. Wilde in Smart v. Saunders, 5. C. B., 895, thus states the nature and effect of such a transaction : "When an agreement is entered into on a sufficient consideration, whereby an authority is given for the purpose of securing some benefit to the donee of the authority, such an authority is irrevocable; this is what is usua ly meant by an authority coupled with an interest." Had the very terms of this transaction been expressed in the form of a power of attorney it would have constituted just such a one as we have described. Mosty would have acknowledged his indebtedness to Wells. His placing the cattle in his possession with the understanding that he was to have an interest in them commensurate with the amount of such debt; that he was to set aside enough of the cattle at $16 per head to satisfy that interest and deliver the balance to Mosty. Had the power of attorney after conveying the interest, directed Wells to sell the entire herd and retain $4300 for himself, and pay the balance to Mosty, or to some other person for him, the usual examples of a power coupled with an interest would have been complete, but no difference between the principle upon which the latter power is construed to be coupled with an interest, and that of the former can be perceived, and the right of Mosty to revoke in the one case was as completely destroyed as in the other. The attempted revocation by the subsequent sales of the cattle did not effect the rights of Wells and no title passed which could deprive him of the benefit of his previous contract.

These views lead to the conclusion that the judgment below must be reversed. As the case was tried before the District Judge without the intervention of a jury, this court would render such judgment as should have been rendered by the district court, were the record presented to us in such condition that we could fully dispose of the rights of the parties. The judgment below will be reversed and the cause remanded, with directions to the court below to enter up such judgment in favor of the appellant, Marshall Wells, as under the law as announced by this opinion he was entitled to obtain upon the former trial of the cause from the result of which this appeal was taken; and to allow him such recovery as he had a right to in the state of the record below, had the decision then been in his favor upon the trial of the right to the property in controversy.