McAdam, J.
This action was to recover §2,711.73, the price of one hundred tons of sulphur sold by the' plaintiffs to the defendants, September 7, 1891. . The contract, as evidenced by the bought and sold notes, provides for the sale and purchase of “one hundred tons of the best unmixed seconds brimstone, .in good, order and condition, in bulk, for shipment by steamer from Sicily during all past month of August, at $27.37^ in United States gold coin or its equivalent, per.ton of 2240 pounds, actual weight *620 ex ship. Cash on delivery. To be delivered ex steamer when ready to discharge. The steamer Iniziativa arrived at the Port of New York, October 3, 1891, with about one thousand tons of sulphur for the plaintiffs, all of the same kind and quality. Upon its arrival the plaintiffs sent the broker an or<3er upon the steamship for the amount sold to the defendants. The order provided for the delivery of one hundred tons seconds brimstone in holds 2 and 3, and named as weighers P. Allen & Sons, 39 South street. The delivery order was indorsed by the broker to the defendants, who in turn indorsed it over to their lightermen, P. W, Jarvis & Company. The lightermén sent the lighter Overton to the dock where the steamer was moored, and- presented the order. The order was accepted by the steamship company, and transfer of the sulpher to the lighter was begun on the afternoon of October 7, 1891. The sulphur was weighed by one of the employes of P. Allen & Sons; it was hoisted from the hold of the steamer to its dock and discharged into a hopper with a scale attachment, and was there weighed and discharged into the. lighter through a chute. The weigher was a sworn official, and represented both buyers and sellers. There was discharged into the lighter during the afternoon some thirty-five tons of sulpher. Work was discontinued at about half-past five in the evening, and resumed thereafter; so that delivery was completed at about half-past nine o’clock that night. Some time during the night the lighter capsized and sank, with the sulphur aboard. By our construction of the contract there was no obligation, on the part of the sellers to make any other or different delivery from that made. By the terms of the contract the buyers were to receive the sulpher out of the steamer when she was ready to discharge ; that is to say, upon receipt of the requisite delivery order and its acceptance by the steamship title passed, and the buyers had the obligation of securing the actual possession of the sulpher. Upon this principle the court below directed a verdict for the plaintiffs for the amount of their claim with interest, and directed the exceptions to be heard in the first instance at general term. Parties can agree that title shall pass without delivery, and the words, “To be received ex steamer when ready to discharge” mean that the burden of securing the act of delivery was to fall upon the buyers; that the sellers were merely to put the buyers in possession of the means of obtaining the goods; and this they did, not merely by the delivery of the order for the goods, but,by its acceptance by the steamer. If the steamer had declined to recognize and accept the order, a different question might have arisen. The effect of this acceptance amounted to acknowledgment that the steamer held the sulpher subject to the order of the buyers, and in this manner it was placed under their control and, for legal purposes, in their custody. This was the evident intention of the parties, and must control. 'Under this construction the question of the steamer’s negligence need not be discussed.
Where a certain number"of articles or fixed quantity of goods are sold from an ascertained lot, identical in kind and value, 'a separation or measurement is not always essential to transfer title, *621 Benjamin on Sales, Corbin’s notes, Sec. 477 ; and see Kimberly v. Patchin, 19 N. Y. 330 ; Terry v. Wheeler, 25 N. Y. 520 ; Russell v. Carrington, 42 N. Y. 118; Bradley v. Wheeler, 44 N. Y 495, Hayden v. Demets, 53 N. Y. 426; Burrows v. Whitaker, 71 N.Y. 291; Sewell v. Eaton, 70 Am. Decis. 471. Although the one hundred tons of sulphur in this case were to have been weighed and separated from the bulk before the buyers received it, title, nevertheless, passed before that act was done ; for such is the rule where it is plain from the contract that that was the intention of the authorities (vide authorities before cited.) Upon this construction of the contract the defendants, the buyers, received their property, and the vendors were absolved from all responsibility for its future safety. The defendants claim that there was a shortage in the delivery ; but the deficit was small, and there is no proof that the plaintiffs wilfully or intentionally made a short delivery; so that if the weigher failed to weigh out the full quantity it was evidently the result of accident, for which a deduction might have been but was not claimed. These views render it unnecessary to consider other questions raiséd, and requires that the exceptions be overruled, and that the plaintiffs have judgment upon the verdict directed in their favor, with costs.
Freedman, J., concurs.