(9 Misc. Rep. 352.)

### MAYER et al. v. BEGGS et al.

(Superior Court of New York City, General Term. July 2, 1894.)

SALE—DELIVERY.

> Plaintiffs sold to defendants a quantity of sulphur, "to be received ex steamer when ready to discharge," and, on the arrival of the steamer, gave an order therefor, which was accepted by the steamship company; and the sulphur was weighed, and put on board a lighter employed by defendants. *Held*, that the delivery to defendants was complete, and plaintiffs were not liable for the loss of the sulphur by the sinking of the lighter.

Action by Otto G. Mayer and others against Eben J. Beggs and others. Judgment was entered on a verdict directed in favor of plaintiffs, and defendants' exceptions were ordered to be heard in the first instance at general term. Overruled.

Argued before FREEDMAN and McADAM, JJ.

J. Hampden Dougherty, for plaintiffs.

Wm. H. Sweny and Roger Foster, for defendants.

McADAM, J. The action was to recover $2,711.73, the price of 100 tons of sulphur, sold by the plaintiffs to the defendants, September 7, 1891. The contract, as evidenced by the bought and sold notes, provides for the sale and purchase of "one hundred tons of the best unmixed seconds brimstone, in good order and condition, in bulk, for shipment by steamer from Sicily during all past month of August, at $27.37½, in United States gold coin or its equivalent, per ton of 2,240 pounds, actual weight ex ship. Cash on delivery. To be received ex steamer when ready to discharge." The steamer Iniziativa arrived at the port of New York, October 3, 1891, with about 1,000 tons of sulphur for the plaintiffs, all of the same kind and quality. Upon its arrival, the plaintiffs sent the broker an order upon the steamship for the amount sold to the defendants. The

order provided for the delivery of 100 tons seconds brimstone, in holds 2 and 3, and named as weighers P. Allen & Sons, 39 South street. The delivery order was indorsed by the broker to the defendants, who in turn indorsed it over to their lightermen, P. W. Jarvis & Co. The lightermen sent the lighter Overton to the dock where the steamer was moored, and presented the order. The order was accepted by the steamship company, and transfer of the sulphur to the lighter was begun on the afternoon of October 7, 1891. The sulphur was weighed by one of the employes of P. Allen & Sons. It was hoisted from the hold of the steamer to its dock, and discharged into a hopper with a scale attachment, and was there weighed and discharged into the lighter through a chute. The weigher was a sworn official, and represented both buyers and sellers. There was discharged into the lighter during the afternoon some 35 tons of sulphur. Work was discontinued at about half-past 5 in the evening, and resumed thereafter; so that delivery was completed at about half-past 9 o'clock that night. Some time during the night the lighter capsized and sank, with the sulphur aboard.

By our construction of the contract, there was no obligation on the part of the sellers to make any other or different delivery from that made. By the terms of the contract, the buyers were to receive the sulphur out of the steamer when she was ready to discharge; that is to say, upon receipt of the requisite delivery order and its acceptance by the steamship, title passed, and the buyers had the obligation of securing the actual possession of the sulphur. Upon this principle, the court below directed a verdict for the plaintiffs for the amount of their claim, with interest, and directed the exceptions to be heard in the first instance at general term. Parties can agree that title shall pass without delivery, and the words "to be received ex steamer when ready to discharge" mean that the burden of securing the act of delivery was to fall upon the buyers; that the sellers were merely to put the buyers in possession of the means of obtaining the goods; and this they did, not merely by the delivery of the order for the goods, but by its acceptance by the steamer. If the steamer had declined to recognize and accept the order, a different question might have arisen. The effect of this acceptance amounted to an acknowledgment that the steamer held the sulphur subject to the order of the buyers, and in this manner it was placed under their control, and, for legal purposes, in their custody. This was the evident intention of the parties, and must control. Under this construction, the question of the steamer's negligence need not be discussed. Where a certain number of articles or fixed quantity of goods are sold from an ascertained lot, identical in kind and value, a separation or measurement is not always essential to transfer title. Benj. Sales (Corbin's Notes) § 477. And see Kimberly v. Patchin, 19 N. Y. 330; Terry v. Wheeler, 25 N. Y. 520; Russell v. Carrington, 42 N. Y. 118; Bradley v. Wheeler, 44 N. Y. 495; Hayden v. Demets, 53 N. Y. 426; Burrows v. Whittaker, 71 N. Y. 291; Sewell v. Eaton, 70 Am. Dec. 471. Although the 100 tons of sulphur in this case were to have been weighed and separated from the bulk before the buyers received it, title, never-

theless, passed before that act was done; for such is the rule where it is plain from the contract that that was the intention of the parties. Vide authorities before cited. Upon this construction of the contract, the defendants (the buyers) received their property, and the vendors were absolved from all responsibility for its future safety.

The defendants claim that there was a shortage in the delivery; but the deficit was small, and there is no proof that the plaintiffs willfully or intentionally made a short delivery; so that, if the weigher failed to weigh out the full quantity, it was evidently the result of accident, for which a deduction might have been, but was not, claimed.

These views render it unnecessary to consider the other questions raised, and require that the exceptions be overruled, and that the plaintiffs have judgment upon the verdict directed in their favor, with costs.