## GEORGE A. CHAPMAN vs. MAJOR R. SHEPARD.

Upon the sale of a certain number of articles, part of a mass of articles of the
same quality and value, a separation of the articles sold from the mass is not
necessary to the passing of the title to the vendee.

Otherwise, where the articles composing the mass are of different qualities and
values, making not merely separation but selection necessary.

Whether the title thus passing is one in severalty or in common : *Quære*. If in
common, it is only so in a qualified sense, and the vendee could maintain
trover for his share of the articles upon demand made on the vendor and a
refusal to deliver.

Whether the title actually passes in such a case must depend upon the intention
of the parties as shown by their express words or by the facts attending the
transaction.

Where the vendee had paid the vendor for the articles, and was to remove them
when he pleased, and nothing more was to be done between the parties to
complete the sale, it was held to be a reasonable inference that the parties
intended an executed sale.

*A* sold to *B* a mass of bags of meal, of uncertain number, on board a vessel, at a
certain price per bag, to be paid in cash. *B*, without paying *A* and before the
bags had been counted, sold *C* five hundred of them, *C* giving his prom-
issory note therefor, which he paid at maturity. *C* informed *A* of his pur-
chase, who told him he could remove the bags when he pleased, but after he
had removed a part he requested him to let the rest remain as a bulk-head for
some corn, until the corn was discharged. In trover afterwards brought by
*C* against *A* for the remainder of the five hundred bags, it was held that *A*
was estopped from claiming, either that the title had not passed to *B*, or that
he had a lien on the bags for the price which *B* was to have paid.

TROVER for sundry bags of meal ; brought to the Superior
Court in New Haven County and tried, on the general issue
closed to the court, before *Sanford, J.* The declaration con-
tained three counts, one for three hundred and sixty bags of
meal owned by the plaintiff in severalty, one for seven hun-
dred and twenty bags owned by the plaintiff and one John T.
Gill in common, and one for eleven hundred bags owned by
the plaintiff, the defendant and the said Gill in common.
The court found the following facts :—

The defendant, in the month of November, 1866, purchased
in Albany, in the state of New York, a cargo of meal, of
about eight hundred bags, and caused the same to be shipped

to him in New Haven, on the schooner Sparkling Sea. The schooner, with the meal on board, arrived at New Haven, in the latter part of the month, and was hauled alongside of Long Wharf, where she lay at a little distance from the store of the plaintiff, until after the 7th of February, 1867, and after the conversion alleged in the plaintiff's declaration. Between the time of the arrival of the schooner and the 10th of January, 1867, the defendant sold and delivered to different persons, sundry of the bags of meal, so that there were left in the schooner on the 10th of January, between five and six hundred bags, but the precise number could not be found upon the testimony. On the 10th of January, the defendant sold to one John T. Gill all the unsold bags of meal then remaining in the schooner, at the agreed price of $2.40 cash per bag. On the 25th of January Gill sold to the plaintiff five hundred of the bags of meal, then in the schooner, and the plaintiff a day or two afterwards notified the defendant of his purchase of them from Gill, and the defendant then gave him authority immediately to remove the same from the schooner. The plaintiff told the defendant that he was busy that day, but would send for them in a few days. On the 4th of February the plaintiff paid Gill for the five hundred bags of meal, by giving his notes therefor on time, which he afterwards paid at their maturity. Gill was a grain and feed merchant, and became notoriously insolvent on the 7th of February, 1867, when, for the first time, his insolvency became known to the defendant. On the 5th of February, the plaintiff, not knowing of the insolvency of Gill, or that he had not paid the defendant for the meal, sent to the schooner for the meal purchased by him of Gill, and received one hundred and forty bags only, the defendant stating that the balance could not be removed until some corn, for which the bags of meal were used as a bulk-head, had first been taken out. The defendant a few days afterwards, upon hearing of the insolvency of Gill, refused to deliver or to allow the plaintiff to take any more of the bags of meal out of the schooner, giving as a reason therefor, that he had not received his pay from Gill, and subsequently, on demand

made, refused, and ever since has refused, to deliver the remainder of the five hundred bags to the plaintiff. Neither Gill nor the plaintiff has ever paid, or offered to pay, the defendant for the meal, or for any part thereof. The schooner was owned in part by the defendant, and in part by other parties, and the defendant at the time of the shipment of the meal in her had an arrangement with the other owners, whereby he was to run her by the year, and from year to year, during the navigation season, and to have the exclusive control and possession of her, and was to earn with her all he could for the joint benefit of himself and the other owners, and to pay all expenses and furnish all supplies and hands, and at the end of each year to account to the other owners for their respective shares of her net earnings. Under this arrangement the defendant, who was a grain and feed merchant in New Haven, and who had a store not far from where the vessel lay, was accustomed to use the schooner during the winter season, when coast and river navigation was impracticable, for storing his grain and meal, brought in her to New Haven, in the same manner as if she was a part of his store, and did in fact store in her the meal so sold by him to Gill, and by Gill to the plaintiff. From the time of the arrival of the schooner till the 7th of February, 1867, and for a long time thereafter, the vessel was laid up alongside of Long Wharf for the winter season, and the defendant had possession of her and used her, during all this time, as a place for storing grain and meal, and selling and delivering the same in the same manner as if she was a part of his store.

The defendant claimed that upon these facts the law was such that the plaintiff had acquired no title to the bags of meal claimed, and that he, the defendant, had a lien thereon for the price thereof and might lawfully refuse to deliver the same until the price was paid, and requested the court so to rule ; but the court ruled otherwise, and rendered judgment for the plaintiff to recover the value of the three hundred and sixty bags of meal, with interest.

The defendant moved for a new trial for error in this ruling of the court.

*Wright*, in support of the motion.

1. This is an action of trover, and the plaintiff, in order to recover, must show that he had a general or special property in the meal in question, and an actual or constructive possession of it, at the time of the commencement of this suit. 1 Swift Dig., 535. It is not 'claimed that he ever had the actual possession of the meal or any special property in it. If, therefore, there be any recovery in this case, it must be because the legal title to the meal was in the plaintiff, carrying with it the constructive possession.

2. The legal title to the meal was not in the plaintiff at the time of the commencement of this suit. No title ever passed from the defendant to Gill, by virtue of the contract of sale of January 10th, 1867. In the first place because, upon a sale of goods for cash, no title passes till payment is made, or the condition is waived. *Smith* v. *Lynes*, 1 Seld., 44; *Cornwall* v. *Haight*, 8 Barb., 327; *Freeman* v. *McKean*, 25 id., 474; *Marston* v. *Baldwin*, 17 Mass., 606; *Houdlette* v. *Tollman*, 14 Maine, 400. It is expressly found that Gill never paid for the meal, or for any part thereof. And it is not claimed that Shepard ever expressly waived to Gill the performance of the condition of payment in cash before delivery. Nor was there any delivery to Gill of the goods, in whole or in part, which could be regarded as a waiver of the condition of cash payment. In the next place, because there can be no completed sale, and consequently no passing of the legal title, so long as anything remains to be done, in order to ascertain the value, quantity, or quality of the goods. *Hanson* v. *Meyer*, 6 East, 614; *Wallace* v. *Breeds*, 13 id.; 522; *Ward* v. *Shaw*, 7 Wend., 404; *Brewer* v. *Salisbury*, 9 Barb., 514; *Weld* v. *Cutler*, 2 Gray, 195; *Crofoot* v. *Bennett*, 2 Comst., 258; *Macomber* v. *Parker*, 13 Pick., 183; *Outwater* v. *Dodge*, 7 Cowen, 85; *Stevens* v. *Eno*, 10 Barb., 95; *Houdlette* v. *Tallman*, 14 Maine, 400; *Lloyd* v. *Holly*, 8 Conn., 494. If, therefore, Gill had sued this defendant, he could not recover either in trover or in special assumpsit. Not in trover, because the legal title never vested in him. Not in special assumpsit, because he could not aver and prove that

he had ever paid, or offered to pay, for the meal in cash upon delivery.

The sale, so called, of the defendant to Gill, was in fact nothing but an executory contract, whereby the defendant agreed to sell and deliver certain meal, upon condition of payment therefor in cash on delivery, and whenever the quantity could be ascertained, so that the gross sum to be paid could be computed.

3. As the plaintiff derived all his rights from Gill, he cannot be in a better condition to maintain this suit than Gill would be. 1st. The so-called sale of Gill to the plaintiff was nothing more than an assignment of Gill's interest in his contract with the defendant, to the extent of five hundred bags, or to such fractional part of his interest as five hundred bags bore to the whole number of bags in the schooner when ascertained. 2d. No title could pass from Gill to the plaintiff, even if it be conceded that Gill had the legal title to all the meal; inasmuch as the five hundred bags, pretended to be sold, were not separated and counted out from the greater quantity contained in the schooner. *Weld* v. *Cutler*, 2 Gray, 195 ; *Stevens* v. *Eno*, 10 Barb., 95.

4. But, conceding that the legal title did pass to Gill, as to the whole of the meal, and to the plaintiff from Gill, as to the five hundred bags, yet, as it was sold for cash and the price had not been paid, the defendant had a lien on it for the price. *Rogers* v. *Thomas*, 20 Conn., 53 ; 1 Smith Lead. Cas., 338 ; *Parks* v. *Hall*, 2 Pick., 206 ; 1 Swift Dig., 379. The plaintiff was a mere assignee of a fractional interest in Gill's contract with the defendant. He took the assignment of five hundred bags, subject to the stipulation of payment in cash on delivery.

5. The delivery to the plaintiff of the one hundred and forty bags did not divest the defendant of his lien, inasmuch as the balance of the five hundred were not separated from the whole mass of meal in the schooner. *Hanson* v. *Meyer*, 6 East, 614 ; *Simmons* v. *Swift*, 5 Barn. & Cress., 857 ; *Weld* v. *Cutler*, 2 Gray, 197 ; *Ward* v. *Shaw*, 7 Wend., 404 ; *Crofoot* v. *Bennett*, 2 Comst., 258 ; *Brewer* v. *Salisbury*, 9

Barb., 514; *McDonald* v. *Hewitt*, 15 Johns., 349; 1 Swift Dig., 379. Even if the whole had been delivered, the title would not have vested in the plaintiff, as there was no intentional waiver of the condition of prepayment in cash. *Smith* v. *Lynes*, 1 Seld., 41; *Freeman* v. *McKean*, 25 Barb., 474.

*Watrous*, contra.

SEYMOUR, J. The plaintiff brought his action of trover in three counts :—

1st. For the alleged conversion of three hundred and eighty bags of meal belonging to the plaintiff.

2d. For the conversion of seven hundred and fifty bags of meal belonging to the plaintiff and defendant as tenants in common.

3d. Alleging the meal to belong to the plaintiff and defendant and one John T. Gill as tenants in common.

It appears from the finding of facts by the judge who tried the cause in the Superior Court, that the defendant, being the owner of a lot of bags of meal consisting of between five and six hundred, on the 10th of January, 1867, sold the lot to John T. Gill at the price of $2.40 per bag. The property was then in a schooner lying at Long Wharf, in New Haven. Afterwards, on the 25th of January, Gill sold to the plaintiff five hundred of these bags still remaining in the schooner. Of this sale the plaintiff notified the defendant, and the defendant gave the plaintiff authority immediately to remove the bags he had purchased. The plaintiff however told the defendant that he was busy that day, but in a few days would send for them. The plaintiff a few days after this conversation, to wit, on the 4th of February, gave Gill his note, which was paid at maturity, for the price of the meal. On the 5th of February the plaintiff received one hundred and forty of the bags, and then took no more, because the defendant said the rest could not be removed until some corn, for which the bags were used as a bulk-head, had first been taken out. Gill became notoriously insolvent on the 7th of February. The defendant, upon due demand made by the plaintiff,

refused to deliver the remaining three hundred and sixty bags of meal and for such refusal this action was brought. The sale to Gill was for cash, and the defendant had not been paid for the meal by him so sold.

The judgment in the Superior Court was for the plaintiff, and the defendant seeks for a new trial.

The defendant's counsel claim that the title did not pass to Gill, for that the counting of the bags was an act remaining to be done as between the defendant and Gill ; and they also claim a right to retain for the unpaid price. As between the defendant and Gill these claims would perhaps be well founded, but we think they cannot prevail against the plaintiff upon the circumstances disclosed in the finding. The defendant gave the plaintiff authority to make immediate removal of the five hundred bags without intimating that Gill's title was not perfect, and thus left the plaintiff to pay the price to Gill. The defendant also treated the meal as belonging to the plaintiff, by delivering one hundred and forty bags, and inducing him to allow the residue to remain without removal, to accommodate the defendant as a bulkhead for his corn, intimating still no infirmity in the title of Gill.

We think it is too late for the defendant to call Gill's title in question after having thus treated it as perfect and complete. The Superior Court very properly regarded the defendant as estopped from setting up the claims now made. If authority is needed for a point so plain it may be found in *Stoveld* v. *Hughes,* 14 East, 308.

But the point most strenuously pressed by the defendant's counsel is this, that admitting Gill's title to have been such that the defendant cannot be permitted to deny it, still, the plaintiff's title is defective. He bought of Gill five hundred out of a larger number of bags, and with the exception of the hundred and forty delivered, the remaining three hundred and sixty were not separated from the mass, and they insist that until such severance the title did not pass ; that until separation the contract was merely executory, and that the title remained in Gill and therefore remained subject to the plaintiff's lien.

This claim comes with somewhat an ill grace from the defendant, inasmuch as it appears that the separation would have been made on the 5th of February had it not been on his request and for his convenience postponed until the bags should be no longer needed as a bulk-head for his corn. But the same considerations of estoppel which apply to the other branch of the case do not apply here, and we must therefore proceed to examine with some care the propositions of law on which the claim of the defendant now under consideration is founded.

The Superior Court having found the issue for the plaintiff we cannot grant a new trial unless some point of law was wrongly decided. Upon the facts found we must regard the title as having passed from Gill to the plaintiff, unless the law is so that until and without the severance of the five hundred bags from the bulk of five or six hundred the title could not pass. The evidence detailed would warrant the Superior Court in finding that the parties intended an executed sale. The price was paid, and nothing remained to be done, as between buyer and seller, to complete the sale. The plaintiff was to take his meal when he wanted it, and as he should want it. Notice of the sale was given to the defendant, in whose custody the property was, who attorned to the plaintiff.

The case therefore depends upon the inquiry whether it be, as the defendant's counsel contend, an absolute rule of law that, upon the sale of a portion of a larger bulk, the contract remains in judgment of law executory until the portion sold is severed and separated for the purchaser from the mass. It must be conceded that this question is not free from difficulty, and that in regard to it respectable authorities differ.

In regard to a large class of cases the law is indisputably as the defendant claims. If I sell ten out of a drove of one hundred horses, to be selected, whether by myself or by the vendee, no title can pass until the selection is made. This rule prevails wherever the nature of the article sold is such that a selection is required, whether expressly provided for

or not by the terms of the contract. If the articles differ from each other in quantity or quality or value, the necessity of a selection is clearly implied. In all such cases the subject matter of the contract cannot be identified until severance, and the severance is necessary in order that the subject matter of the contract may be made certain and definite.

But where the subject matter of the sale is part of an ascertained mass of uniform quality and value, no selection is required, and in this class of cases it is affirmed by authorities of the highest character, that severance is not, as matter of law, necessary in order to vest the legal title in the vendee to the part sold. The title may and will pass if such is the clear intention of the contracting parties, and if there is no other reason than want of separation to prevent the transfer of the title.

The leading case on this subject in England is that of *Whitehouse et al., Assignees of Townsend* v. *Frost*, 12 East, 614. That case has been the subject of some adverse criticism, but in respect to the point under consideration it seems to us to have been properly decided. The sale to the bankrupt was of ten tons of oil, in a cistern containing forty tons. There was no severance of the ten tons from the remaining thirty, and the court held that the title vested in the bankrupt, so that his assignee could maintain an action of trover. The case was elaborately discussed at the bar and by the bench, and BLANC, J. says,—" Something it is said still remained to be done, namely, the measuring off the ten tons from the rest of the oil. Nothing however remained to be done to complete the sale. The objection only applies where something remains to be done as between buyer and seller for the purpose of ascertaining either the quantity or the price, neither of which remained to be done in this case."

Nothing was said by the counsel or the court in the case of *Whitehouse* v. *Frost* about a tenancy in common being created by the contract. In a subsequent case, *Busk* v. *Davis*, 2 Maule & Selw., 397, the suggestion is made that the sale was of an *undivided quantity* of the oil, as it undoubtedly

was, but though the property was intermixed with other pro-
perty of the same kind, the *title* was held to be in severalty
for the practical purpose of being protected by an action of
trover, and it is such a property as includes the ordinary
risk of ownership, which indeed would be true whether the
title were in common or in severalty.

In the case of the oil it was the intention of the vendors to
confer on the vendee a perfect right at any time to take his
ten tons. The vendee was to have the same right to the ten
tons that the vendors retained in the remaining thirty tons ;
and conceding such to have been the contract, why should
the law disappoint that intention by an arbitrary rule of law
against it ?

Among the earliest cases which we find on this subject in
this country is that of *Pleasants* v. *Pendleton*, reported in 6
Randolph's Virginia R., 473. The sale was of a certain
number of barrels of flour, part of a larger parcel of such
barrels, of the same brand and of equal value. The contract
was complete in every respect except the separation of the
barrels sold. The court held that the title passed, one of the
judges saying, " These are not portions of a larger mass to
be separated by weighing and measuring, but consist of divers
separate and individual things, all precisely of the same kind
and value, mixed with other separate and individual things
of the same kind and between which there is no difference."

The leading case on this subject in the state of New York
is that of *Kimberly* v. *Patchin*. The matter is elaborately
discussed and the conclusion is well expressed in the reporter's
syllabus :—" Upon a sale of a specified quantity of grain
its separation from a mass indistinguishable in quality or
value with which it is included, is not necessary to pass the
title, when the intention to do so is otherwise clearly mani-
fested." 19 New York R., 330. Judge Comstock, in giving
the opinion of the court, remarks :—" It is not necessary to
decide whether the parties to the sale became tenants in
common. If a tenancy in common arises in such cases it
must be with some peculiar incidents not usually belonging
to that species of ownership."

In *Waldron* v. *Chase*, 37 Maine R., 414, it was decided that where the owner of a large quantity of corn in bulk sells a certain number of bushels therefrom and receives his pay, and the vendee takes away a part, the property in the part sold vests in the vendee, although it is not measured or separated from the heap.

In Pennsylvania (7 Penn. S. R., 140, *Hutchinson* v. *Hunter*,) and in Ohio, (7 Ohio, 467, *Woods* v. *McGee*,) the courts seem to hold that severance from the mass is absolutely essential to the vesting of title in the vendee. The opinion expressed in those cases is strongly in that direction, and yet the cases themselves would be decided by us precisely as they are decided by those courts, for in the Pennsylvania case it appears that the subject of sale was part of a bulk of unequal quantities and values, and in the Ohio case the barrels of flour composing the bulk varied in value from twenty-five to fifty cents per barrel.

If in the case we have under our consideration any such fact appeared we should decide in favor of the defendant, for our decision is based upon the fact that the bags of meal do not appear to have been in any respect different one from another.

The subject we are discussing seems to have perplexed the courts of Massachusetts. In the case of *Scudder* v. *Worster*, 11 Cushing, 573, severance seems to be regarded by the court as essential in cases of this kind to the transfer of the title, and yet in a somewhat more recent case of *Weld* v. *Cutler*, 2 Gray, 195, it was held that upon a mortgage of a portion of a larger mass of coal, the title passed to the mortgagee as against an assignee in bankruptcy of the mortgagor without and before separation, where the whole mass was put into the possession of the mortgagee to enable him to separate his part from the bulk. Such a delivery is so decided evidence of an executed mortgage as to leave no doubt of the intention of the parties, and yet until the separation is made that act remains to be done, and the decision recognizes the title of the mortgagee as valid and executed in him prior to the severance and while the property is intermixed and in com-

mon, and thus seems to recognize the doctrine established in Virginia, New York and Maine, that such a title is possible in law. If it be in law possible, then its existence in a particular case must depend upon the clearly expressed wish and intention of the parties.

In view of the authorities which we have commented upon and of the reason of the thing we have come to the conclusion—1st, that there is no legal bar which prevents the transfer of the title until actual separation of the five hundred bags from the mass; and 2d, that the facts in the case before us warrant the Superior Court in finding that the parties intended that the title should pass. The fact that the contract was executed on the plaintiff's part by the execution and delivery of his note, since paid, for the price, is very significant. There is no indication in any part of the case of any thing executory remaining to be done by Gill. If the meal had been destroyed by fire and Gill had remained solvent, we think the plaintiff could not have successfully sued Gill for non-delivery as upon an executory agreement to count out, separate and deliver the five hundred bags. Gill's answer would be that he had done every thing that he had contracted to do—every thing which it was expected he should do. He had placed the property within the control of the plaintiff, who had assumed the control by taking away a part and allowing the residue to remain in the schooner for the defendant's convenience.

The title then we think passed, whether in severalty or in common it is unnecessary to decide, for there are counts in the plaintiff's declaration adapted to either alternative. If there were evidence by express words or by fair inference of an intention on the part of Gill to confer, and on the part of the plaintiff to take, a joint title in the mass of the bags in the proportion of five hundred to the whole number, the case would be entirely free from the embarrassments which have been under consideration. It is of course competent for the owner of six hundred bags of meal of equal quality and value to sell five-sixths of them, and to transfer the title to the

five-sixths without severance. In such case the ultimate severance, if it ever takes place, is not as between the parties as vendor and vendee, but between them as tenants in common after the full completion of the sale. In such case after the sale the parties are tenants in common, with all the incidents of that relation.

But there is no evidence that Gill and the plaintiff intended a tenancy in common, unless such a relation is the necessary consequence of holding that the title passes while the property remains intermixed and unseparated. But if the intention of the parties is clear that the title shall be transferred, we should hold that such intention must be carried into effect, and if the only mode of accomplishing the purpose of the parties is through the medium of a tenancy in common, then such tenancy is created. The authorities however do recognize a species of title in severalty to a definite portion of property remaining intermixed with other property of the same identical kind. Thus in *Gardner* v. *Dutch*, 9 Mass., 427, the action was replevin for seventy-six bags of coffee which were lying in common with other bags belonging to third persons. These seventy-six bags were not distinguished by any particular marks, or by a separation of them in any manner from the rest of the coffee. The court say: "If the plaintiff was in fact tenant in common he could not maintain replevin; but he was not tenant in common. Although the bags belonging to him had no distinguishing marks, he might have taken the number of bags and the quantity of coffee to which he was entitled by his own selection while they remained in the hands of Welman and Ropes." If then the title of the plaintiff was in a sense common, yet it was only quasi joint; a temporary community only was contemplated. The plaintiff was entitled to take immediate possession of his portion without let or hindrance from his companion in the ownership of the mass. In the case of *Whitehouse* v. *Frost* it was held that this title is such that the plaintiff might maintain trover for the conversion of his property against his companion upon proof of mere demand and

refusal to deliver to the plaintiff his share, which could not be done in ordinary cases of joint tenancy.

A new trial is not advised.

In this opinion the other judges concurred.