## HURFF v. HIRES.

1. Where there is a sale of a specified quantity of grain, from a mass identical in kind, and uniform in value, a separation of the quantity sold is not necessary to pass the title, where the intention of the parties that the property should pass by the contract of sale, is clearly manifested; otherwise, where the articles composing the mass are of different qualities and values, making a selection, and not merely separation, necessary.

2. The defendant bought of one H. two hundred bushels of corn, out of a lot of four or five hundred bushels in H.'s crib-house. He inspected, and approved of the corn as it lay in bulk, and paid the price in cash. The arrangement between the defendant and H. was, that the corn should be left in the crib until it was hardened, and then H. was to deliver it. The whole lot of corn was then levied on by the plaintiff, as sheriff, under an execution against H. After the levy, H. measured out and delivered two hundred bushels of it to the defendant. In trover by the sheriff—*held*, that a charge to the jury, the two hundred bushels the defendant bought not having been separated from the entire bulk, no property in it passed to the purchaser, and that the whole was liable to levy under the execution against H., and that the defendant was liable to the sheriff for the value of the two hundred bushels, was erroneous.

On error to the Supreme Court.

Hurff, the plaintiff in error, in the fall of 1873, purchased of one Heritage two hundred bushels of corn, out of a lot of four or five hundred bushels which Heritage had in his crib-house. He inspected and approved of the corn before he bought it, and paid the cash for it immediately on the purchase. The arrangement between Hurff and Heritage was, that the corn should be left where it was until it should get hard enough to keep well in bulk, and then Heritage was to deliver it. In January, 1874, Hires, as sheriff of the county of Salem, by virtue of an execution against Heritage, levied on the entire quantity of the corn as his property. After the levy, Heritage delivered two hundred bushels of the corn to the defendant, whereupon the sheriff brought trover against him. The defendant requested the court to instruct the jury that if Hurff and Heritage, at the time of the sale of the corn, both meant and understood the sale to be complete, the property in the corn passed to Hurff, and the plaintiff could not recover its value for his refusal to return it after it was separated and delivered to him by Heritage. This request was refused; and the court charged, that notwithstanding Hurff bought and paid for two hundred bushels of Heritage's corn, before there was any levy upon it, yet as it appeared it was in bulk with other corn, and not separated

at the time of the sale, no property in the corn passed to Hurff, but remained in the defendant in execution, and was bound by the levy, and that therefore the defendant was liable to the sheriff for the value of the corn he received by the delivery of Heritage.

Error has been assigned on the charge as given, and the refusal to charge as requested. The case in the Supreme Court is reported in 10 *Vroom* 4.

For the plaintiff in error, *D. J. Pancoast.*

For the defendant in error, *H. L. Slape.*

The opinion of the court was delivered by

DEPUE, J. By the twentieth section of the act concerning executions, if any person shall purchase, in good faith, of a defendant in execution any goods or chattels, and pay for the same, prior to the levy of the execution, and without notice thereof, the title of such purchaser shall not be divested by the fact that such execution had been delivered before such purchase was made. *Rev., p.* 393. This section was passed with a view to change the common law rule, that goods and chattels were bound by an execution from the time of its teste, and to qualify the provisions of the eighteenth section of the same act, which gave an execution force against goods and chattels only from the time of its delivery to the sheriff; but it clearly indicates the legislative policy of protecting the rights of *bona fide* purchasers from executions against the vendor, where it may be done consistently with the rules of law. Delivery of the goods purchased is not essential to the protection of the purchaser's rights. A purchase in good faith, without notice of the execution, and payment of the price, prior to actual levy, are the conditions under which his title is good.

The corn was purchased by Hurff and paid for in good faith before the execution was issued. It was lying in the bulk, unseparated, when the levy was made; and, after levy,

was separated from the mass, and delivered by the vendor. The case was tried in the court below on the theory that, though the purchaser bought the corn and paid the price, the title did not pass to him, because the quantity sold was not separated from the original bulk until after levy, and that, therefore, the whole still remained liable to seizure as the property of the vendor.

If the property had remained in bulk—the quantity purchased never having been separated from the mass—the purchaser might not have been able to maintain replevin, for the reason that in replevin the plaintiff must be the owner of the specific chattels he sues for, and must describe them in his writ. *Scudder* v. *Worster*, 11 *Cush.* 573. But that does not solve the question involved in this case. May not a party who has bought and paid for a specified quantity or number of articles from a larger mass, identical in kind and uniform in value, maintain trover against a third person who converts the whole, or defend in trover brought by an officer levying on the whole as the property of the vendor, when a separation of the quantity he was entitled to under his purchase has been made after levy, and possession thereof has been delivered to him?

It is the general rule that the property in goods and chattels passes under the contract of sale according to the intention of the parties. The difficulty in the application of this rule is in determining under what circumstances the parties shall be considered as having evinced an intention that property in the subject matter of sale should pass from the vendor to the purchaser. The cases on this subject are quite numerous, and are not harmonious. Those which have been decided on the peculiar language of the statute of frauds have held a very stringent rule. Where the right of an unpaid vendor to retain the goods is involved, courts have laid hold of slight circumstances to retain in him the property until the purchase money be paid. *Hanson* v. *Meyer*, 6 *East* 614; *Wallace* v. *Breeds*, 13 *East* 522; *Shepley* v. *Davis*, 5 *Taunt.* 616; *Busk* v. *Davis*, 2 *M. & S.* 397; *Swanwick* v. *Sothern*, 9 *A. & E.*

895; *Godts* v. *Rose*, 17 *C. B.* 229. Another class of cases are those in which the contract is to supply goods of a particular description, which would be fulfilled by furnishing any goods of the quality and kind agreed to be furnished. *Austen* v. *Craven*, 4 *Taunt.* 644; *Wait* v. *Baker*, 2 *Exch.* 1. There is still another class of cases where the sale is completed in all respects, except that the bulk from which the property purchased is to be separated, is not identical in kind or uniform in value, and some advantage may be derived from the privilege of selection. *Toote* v. *Marsh*, 51 *N. Y.* 288.

The question whether the property has passed under a contract of sale, has generally arisen where the right of an unpaid vendor is in the issue. Payment of the price is so essential an ingredient of a sale that neither in law nor in morals is the buyer entitled to have the goods until he pays for them. The lien of the vendor is waived where payment is to be made at a future day, or there has been a delivery actual, and in some cases merely constructive: hence the inclination of the courts to hold, on slight circumstances, that the contract is so incomplete that a transfer of title was not intended where the delivery is constructive only, and the insolvency of the buyer has intervened with the contract price unpaid. Prominent, also, among the cases in the same direction, are those in which the right of the purchaser to object to the quality of the article, which is the subject matter of the contract of sale, is involved. Here, also, there is an inclination to hold the title to be in abeyance, if any well grounded objection to quality is apparent. A contract for the delivery of goods, merely of a particular description, is necessarily executory; and where it relates to a certain quantity from a large bulk, not uniform in quality or value, the transaction is so incomplete that until selection, and not mere separation, is made, the rights of the parties respectively are undefined. In cases like those mentioned, it is considered, for substantial reasons, that the title does not pass immediately upon the terms of the contract being agreed on; not that these cases create exceptions to the rule that the property will pass by the contract, if such be the

intention of the parties, but the circumstances are such, and of such weight, that it is presumed that it was not the intention of the parties that the sale should be complete.

The case under review is distinguished, by marked peculiarities, from those embraced in the foregoing classification. The contract of sale was not obnoxious to the statute of frauds. The price was paid, and, consequently, no right of a vendor to have the unpaid purchase money existed. Nothing remained to be ascertained or adjusted, to determine what the rights of the parties were. The property had been inspected and approved; it was left with the vendor for the purchaser's convenience, and the mass from which quantity alone was to be separated, was identical in kind and uniform in value, so that the privilege of selection would not confer any advantage upon either party. Nothing was left undone by the parties, except measuring out the quantity purchased from any part of the whole bulk—a ministerial act which might be done by either party, or by any stranger, as well as by the parties themselves.

The tendency of the modern decisions is to give effect to contracts of sale according to the intention of the parties, to a greater extent than is found in the older cases, and to engraft upon the rule that the property passes by the contract of sale, if such be the intention, fewer exceptions, and those only which are founded on substantial considerations affecting the interests of parties. At one time, it was held that, under an agreement to purchase an entire bulk at a specified price, the property did not pass if the whole amount of the purchase money depended upon an ascertainment by weight or measurement subsequently to be made. *Hanson* v. *Meyer*, 6 *East* 614. This decision was made in favor of an unpaid vendor, and was afterwards distinguished, on the ground that the weighing was to be done by the seller, and it was held that the property would pass if such was the intention of parties, though something was to be done, such as weighing, measuring, or testing the goods, to ascertain the contract price, if what remained to be done was to be done by the buyer.

*Turley* v. *Bates*, 2 *H. & C.* 200. This distinction was adopted in *Boswell* v. *Green*, 1 *Dutcher* 390. Still later, the English courts entirely repudiated this distinction, and held, in cases where the weighing was to be done by the seller, the property would pass, though the ultimate contract price was to be ascertained by a subsequent weighing, if the parties so intended; and Chief Justice Cockburn, in his opinion, said that " it is equally clear that, in point of principle and in point of common sense, there is nothing to prevent a man from passing the property to the thing he proposes to sell and the buyer proposes to buy, although the price may remain to be ascertained afterwards." *Martineau* v. *Kitching*, *L. R.*, 7 *Q. B.* 436; *Castle* v. *Playford*, *L. R.*, 7 *Ex.* 98. It may now be considered as the law of the English courts, that where the contract price has been paid or advances made on it, the property will pass to the buyer, according to the intention of the parties, although something remains to be done by the seller to complete the goods, in conformity with the contract, before they are ready to be delivered. *Young* v. *Matthews*, *L. R.*, 2 *C. P.* 127; *Langton* v. *Waring*, 18 *C. B.* (*N. S.*) 315.

That the parties contemplated the corn should be measured before it left the vendor's possession, will not, of itself, prevent the property passing. Nor will the fact that the vendor was required to deliver it when the time for delivery arrived, accomplish that result. Where the goods sold have been selected and designated, and the price paid, the property will pass by the contract of sale, though it was one of the terms of the contract that the vendor should transport them to a place named for delivery. *Terry* v. *Wheeler*, 25 *N. Y.* 520. The case, therefore, must stand exclusively on the fact that no separation of the quantity sold had been made from the entire bulk before the execution was levied, and the question is, whether there is a rule of law requiring, under the circumstances of this case, a separation of the quantity sold from the larger bulk, before title will pass to the purchaser, so positive in its sanction as to overrule the intention of the parties.

It is undoubtedly the doctrine of the English courts that, " where there is bargain for a certain quantity *ex* a greater quantity, and there is a power of selection in the vendor to deliver which he thinks fit, there the right to them does not pass to the vendee until the vendor has made his selection." Per Bayley, B., *Gillett* v. *Hill*, 2 *C. & M.* 530. This doctrine is founded on correct principles, where the gross bulk is variable in kind or quality, and the selection from it of that part which shall be delivered is of benefit to the vendor. It has been applied to a sale of a specified quantity, from a larger bulk of uniform kind and value, where the purchaser had seen the goods in bulk and approved of it. *Aldridge* v. *Johnson*, 7 *E. & B.* 885.

In my judgment, this principle should not be applied where the bulk, from which the quantity purchased is to be separated, is uniform in kind and quality, and has been approved by the purchaser, and the full contract price has been paid. There is a clear and well settled legal distinction between the individual rights of several parties in goods of uniform kind and quality, and in those in which there is no uniformity in these respects. It is recognized in cases of a co-tenancy of personal property, readily divisible by weight or measurement, into portions absolutely alike in quality and value. In such cases, either tenant may take his proper proportion, and it will be regarded as a proper severance, so long as he does not take more than his share; but the rule is otherwise in case of property not severable in this manner: in that event, the partition must be by agreement, or proceedings in equity. *Tripp* v. *Riley*, 15 *Barb.* 333; *Channon* v. *Lusk*, 2 *Lansing* 211; *Clark* v. *Griffith*, 24 *N. Y.* 595; *Freeman on Co-tenancy*, § 252; 6 *Am. Law Rev.* 458. It is also recognized in cases of the intermingling of the goods of several owners, where the whole is indistinguishable in quality and value. In *Jackson* v. *Anderson*, 4 *Taunt.* 24, one F., at Buenos Ayres, consigned to L. & Co. a barrel containing four thousand seven hundred and eighteen Spanish dollars, and advised the plaintiff that one thousand nine hundred and sixty-nine

of them were designed for him as a remittance of the next proceeds of sales made by him on plaintiff's account. L. & Co. assigned the bill of lading to the defendants, who received the whole value of the four thousand seven hundred and eighteen dollars, and carried it to the credit of L. & Co. In an action of trover, the plaintiff was allowed to recover. No separation was ever made of the one thousand nine hundred and sixty-nine dollars which the plaintiff should have received, and, consequently, there was no individualization of the specific dollars he was entitled to. It was contended by the defendants that, no separation having been made of the one thousand nine hundred and sixty-nine dollars, to enable the plaintiff to designate them as his property, trover was not maintainable. The objection was overruled, and Chief Justice Mansfield said : " It appears that no separation was ever made from the whole quantity of one thousand nine hundred and sixty-nine dollars belonging to the plaintiff, and an objection has been taken on that ground against the form of action ; but we think there is no difficulty in that point ; the defendant has disposed of all the dollars, consequently he has disposed of those which belong to the plaintiff ; and, as all are of the same value, it cannot be a question what particular dollars were his. * * One has a right to a certain number, and the other to the rest. If a man keeps all, and has no right to a part, the action lies for that part which he wrongfully detains." In *Gardner* v. *Dutch*, 9 *Mass.* 427, the plaintiff, in the adjustment of the accounts of a voyage performed for W. & R., in the schooner Liberty, became entitled to seventy-six bags of coffee, lying in a lot of bags, and not distinguished by marks, or in any manner separated from the others. As against an officer levying on the whole, by virtue of an attachment against W. & R., the plaintiff was allowed to maintain replevin for his part, the court saying, " though the bags belonging to him had no distinguishing marks, he might have taken the number of bags and the quantity of coffee to which he was entitled by his own selection, while they remained in the hands of W. & R., and the

defendant, as a deputy sheriff, could not change the rights of third parties."

There are authorities of great weight, that apply this doctrine to contracts of sale. In *Whitehouse* v. *Frost*, 12 *East* 614, the defendants, Dutton and Bancroft, were the owners of forty tuns of oil in the oil-house at Liverpool, of which they held the key. They sold ten of the forty tuns to Frost, who, in turn, sold the same to Townshend, who afterwards became bankrupt, and the plaintiffs were his assignees. The oil, at the time of the purchase by Townshend, and when he became bankrupt, was lying in the cistern, mixed with the other oil. The plaintiffs were, nevertheless, held entitled to maintain trover, though the oil had never been separated from the quantity in the cistern. In *Woodley* v. *Coventry*, 2 *H. & C.* 164, one Clarke had purchased of defendants, who were corn factors, three hundred and fifty barrels of flour, of specified brands, and received from them a delivery order. Clarke sold three hundred and forty-eight barrels to the plaintiffs, and gave them a delivery order, which was accepted by the defendants. The defendants having afterwards refused to make delivery, the plaintiffs brought trover. The defendants had in their warehouse a much larger quantity of flour of the specified brands, and there had been no separation or appropriation of any particular barrels to Clarke. It was objected, on behalf of the defendants, that as there had been no appropriation of any specific barrels of flour, no property passed from the defendants to Clarke, and therefore he could convey no property to the plaintiffs. The objection was overruled, and the plaintiffs had a verdict. In *Gillett* v. *Hill*, 2 *C. & M.* 530, the defendant, a wharfinger, accepted an order made by one of their customers, in favor of the plaintiffs, for twenty sacks of flour. In trover, it was contended that no specific sacks having been selected and appropriated by the defendants, no property vested in the vendee, and trover was not maintainable. The court held the action was well brought. In *Knights* v. *Wiffen*, L. R., 5 Q. B. 660, the defendant having a quantity of barley in sacks, lying in his granary, sold eighty

quarters to M. No particular sacks were appropriated to M., but the barley remained at the granary, subject to his orders. M. sold sixty quarters to the plaintiff, who paid for them, and received a delivery order, which was presented to and accepted by the defendant. On refusal, by the defendant, to deliver the sixty quarters, the plaintiff was allowed to recover their value in trover. In *Farmeloe* v. *Bain*, 1 *C. P. Div.* 445, the defendants sold to B. & Co. one hundred tons of zinc, to be taken from a quantity defendants had on their wharf. The plaintiffs bought of B. & Co., and paid for, fifty tons of the zinc. No separation was made of either the one hundred tons originally purchased by B. & Co., or of the fifty tons bought by the plaintiffs. The action was in trover and detinue for fifty tons of zinc, and no point was made by counsel or court that a separation of the goods sued for had not been made from the gross bulk. The case resulted in favor of the defendants, on the ground that they were unpaid vendors, and that they did not intend to part with their property without payment for it.

These cases cited, it is true, were against defendants, who were treated as mere custodians of the property, and the right to maintain the action was put on the ground of estoppel. The English courts make a distinction between this class of cases and actions directly between the vendor and purchaser. But, manifestly, this distinction is in semblance only, and not in substance. In each of the cases above cited, except Gillett *v.* Hill, the defendant was the original vendor, and no separation of the goods had been made as between him and his vendee, and the acceptance of a delivery order created no other contract than that in force between him and his vendee, to hold for the benefit of the sub-vendee a certain designated quantity of goods. Acceptance of the delivery order might estop a defendant from denying that he had that quantity of goods in his custody, subject to the order of the person signing the delivery order. But if there be a rule of law which overrules the intentions of parties, and forbids property pass-

ing under a contract of sale, unless the quantity sold be sepa-
rated from the larger mass, it is difficult to perceive why it
should not produce the same result between the original
vendor and the holder of a delivery order, who, in virtue
thereof, succeeds only to the rights of the original vendee, as
it would between the parties to the original contract of sale.
Nor will the fact that a defendant stands in the position of
being regarded as a mere custodian of the property, materially
alter the situation of the parties, for it is well settled that a
vendor may become the bailee of his vendee, and the custo-
dian for his benefit of the property sold, if the parties so
intend. *Marvin* v. *Wallis*, 6 *E. & B.* 726; *Beaumont* v.
*Brengeri*, 5 *C. B.* 301; *Castle* v. *Sworder*, 6 *H. & N.* 828.

While the English courts adhere to the rule that, as be-
tween vendor and purchaser, separation of the quantity sold
from a larger bulk, identical in kind and quality, is necessary
before the title will pass, how slight and unimportant a cir-
cumstance will take the transaction out of the operation of
the rule is shown by *Aldridge* v. *Johnson, supra*. There, the
plaintiff bought of one K. one hundred out of two hundred
quarters of barley, which plaintiff had seen in bulk and ap-
proved, and he paid part of the price. It was agreed that the
plaintiff should send sacks for the barley, and that K. should
fill the sacks and take them to a railway station to be for-
warded to the plaintiff. The plaintiff sent sacks only for part
of the barley. K. filled these but did not deliver them, and
in a few days he turned the barley out of the sacks on the
heap from which it was taken, so as to be indistinguishable
from the rest of the heap, and became bankrupt. The plain-
tiff tendered to the assignee in bankruptcy the balance of the
purchase money, and demanded the two hundred quarters of
barley, and, on a refusal to deliver them, sued him in trover.
It was held that he was entitled to recover for the portion put
in the sacks by K., but for the residue he was without remedy.
It did not appear in the case that the plaintiff, in fact, knew
that a portion of the barley had been put in the sacks, and,

therefore, he could not actually have assented to the selection that was made, and the assent of the vendee to the specific appropriation was regarded in *Campbell* v. *Mersey Docks*, 14 *C. B.* (*N. S.*) 412, as necessary when such an appropriation is needed to transfer the title.   Furthermore, when the demand was made on the assignee in bankruptcy, which laid the foundation for the action, the barley lay in the heap, and the part K. had put in the sacks was not distinguishable from the rest.   If, therefore, the defendant had complied with the demand so far as the court held that he should have complied, he could only have done so by separating from the heap as much in quantity as the bankrupt had measured up—a process he could have as readily performed in relation to the full quantity of the barley covered by the contract.   A comparison of the facts in evidence with the result that was reached, will show that the rights of the parties were disposed of upon a mere formality.

In the American courts the cases on this subject are quite conflicting.   Many of them are cited and examined by Mr. Holmes in his notes to 2 *Kent* (12*th ed.*) 492, 590, and more particularly in his article in 6 *Am. Law Review* 450.

In Virginia, New York, Connecticut and Maine, the courts have held the broad doctrine, without qualification, that on a contract of sale of a certain quantity from a larger bulk, uniform in kind and quality, the property will pass, though there be no separation of the quantity sold, if such be the intention of parties, and that no rule of law will overrule such intention if it be otherwise clearly expressed.   *Pheasants* v. *Pendleton*, 6 *Randolph* 473;   *Kimberly* v. *Patchin*, 19 *N. Y.* 330;   *Russell* v. *Carrington*, 42 *N. Y.* 118;   *Chapman* v. *Shepard*, 39 *Conn.* 413;   *Waldron* v. *Chase*, 37 *Maine* 414.

Kimberly *v.* Patchin is a leading case.   It was there held that upon a sale of a specified quantity of grain, its separation from a mass indistinguishable in quality or value in which it was included, was not necessary to pass the title when the intention to do so was clearly manifested.   But it is otherwise

where the articles composing the mass are of different qualities and values, making not merely separation but selection necessary. *Chapman* v. *Shepard, supra.* In Waldron v. Chase, it was decided that where the owner of a large quantity of corn in bulk, sold a certain number of bushels and received his pay, and the vendee took part away with him, the property in all the corn vested in the vendee, although it was not measured or separated from the heap. This case was not overruled by *Morrison* v. *Dingley,* 63 *Maine* 553, but was distinguished on the ground that in the latter case the vendor had not received his pay, and it was not to be presumed that he intended to part with his title without payment of the contract price.

The doctrine held in these cases, it seems to me, is founded on good sense and correct legal principles. The rule that the property in goods will pass by the contract of sale, if such be the intention of the parties, is of the utmost importance in the transaction of the business of the country, and it ought not to be qualified by exceptions and restrictions which do not arise from the substantial interests of the parties.

In this case the sale, in all material respects, was complete. The corn had been inspected and approved, and the price agreed on and paid. All these things had been done before the levy of the execution. The property had been left with the vendor for the purchaser's convenience. Nothing was left undone but measuring out the designated quantity from a bulk identical in kind and value, and a delivery to the vendee. That was done after the levy, and before suit brought; and there is no pretence that it was unfairly done.

The defendant, by his purchase, and the payment of the price, acquired equitable rights that ought, if possible, to be protected; and it is the policy of the law to protect interests acquired for a valuable consideration in good faith, against the claims of execution creditors. In trover, property is involved only so far as determines the form of the action and the damages recoverable. The defence was a meritorious one, and no legal principle is in the way of permitting it to be made, if, in fact, the parties intended that the property should

pass. That question should have been submitted to the jury, and, for that reason, the judgment should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DALRIMPLE, DEPUE, DIXON, KNAPP, REED, DODD, GREEN, LILLY, WALES. 10.