ANDREW MITCHELL *vs.* MAX WEINER.

First Judicial District, Hartford, January Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Under our Sales Act (General Statutes, § 4683), which follows the previously existing rule upon that subject, no property in the goods passes to the buyer unless and until the goods are ascer-

Mitchell *v.* Weiner.

tained. Accordingly, under a so-called sale of "about 2,000 bushels of number one potatoes" out of a crop of 3,000 bushels commingled in an indiscriminate mass, from which the potatoes of the number one grade are to be selected, no property in specific potatoes passes to the buyer until the selection and separation has been effected.

Argued January 7th—decided March 5th, 1920.

ACTION to recover the balance of the purchase-price of a crop of potatoes alleged to have been sold to the defendant, brought to the Superior Court in Hartford County and tried to the jury before *Burpee, J.;* verdict and judgment for the plaintiff for $2,032, and appeal by the defendant. *Error and new trial ordered.*

In 1917 the plaintiff, a farmer, raised a crop of potatoes which, consisting of all grades, amounted to about 3,000 bushels. On October 16th of that year he was visited by one Shindel, the duly-authorized agent of the defendant, a wholesale dealer. A bargain was then concluded for the defendant's purchase of the No. 1 potatoes, and thereupon the agreement of the parties was reduced to writing and signed by them as follows:—

"Hartford, October 16, 1917.

"I, Andrew Mitchell, of Buckland, Conn., have after due consideration sold my entire crop of potatoes to consist of about two thousand bushels of number one potatoes, to be well graded for two dollars per bu., to Weiner Bros. of Hartford. The grade of these potatoes shall consist of sound potatoes of similar varietal characteristics, which are to be free from dirt or other foreign substance or matter, absolutely free from frost injury, sunburn, second growth, cuts, scab, blight, dry rot, and damage caused by disease, insects, or mechanical means. The minimum diameter of the round varieties shall be two inches, and the minimum diameter of the long varieties shall be one and seven-eighths inches.

"I furthermore agree to deliver the potatoes when Weiner Bros. desires to have me do so. Weiner Bros. agrees to furnish me the bags, I also agree not to sell these potatoes to any person or persons, unless instructed in writing by Weiner Bros.

"A check of fifty dollars is hereby given to bind contract and to apply on account of potatoes.

"Andrew Mitchell      Weiner Bros. per T. S. Shindel."

The plaintiff offered evidence to prove the following additional facts: At the time the bargain was made and the writing signed, his entire crop remained as the potatoes were dug—unsorted, ungraded and in a commingled mass made up of various grades,—and in that condition it was seen and examined by Shindel before the writing was executed. Subsequently the plaintiff sorted and graded them, obtaining therefrom about 2,000 bushels of No. 1. These latter were thereafter kept and stored by him separately and apart from those of lower grades, and for the defendant. No request for their delivery was made by the defendant until February 19th, 1918. Thereupon, on the 20th of that month, the plaintiff delivered, as requested, the first load, containing 145 bushels. A day or two later he delivered a second load, and on the 26th, the third. These three loads were accepted and paid for by the defendant at the contract price of $2 per bushel. March 8th he delivered a fourth load which, and all undelivered potatoes, the defendant refused to receive. The plaintiff thereupon sold those not delivered and accepted, at the best available market price. That price having declined, he was able to obtain only $1 a bushel. All the potatoes offered to the defendant were number one.

The defendant offered evidence to prove that the potatoes delivered on February 25th were scabby, frost-bitten, and in bad condition, and not number one

grade; that he requested the plaintiff to take back the inferior ones, which the latter refused to do; that the defendant thereupon told the plaintiff that he would not accept any more—that he wouldn't have anything more to do with the plaintiff; that no further attempts at delivery were made until about the 8th or 10th of March, when he refused acceptance; that he intended to use the potatoes purchased of the plaintiff as seed potatoes, the market price of which was $7 per eleven peck sack, and that scabby, frost-bitten, or No. 2 potatoes were not suitable for such use.

*Saul Berman*, for the appellant (defendant).

*Nathan O. Freedman*, for the appellee (plaintiff).

PRENTICE, C. J.   The court instructed the jury that upon the execution of the writing of October 16th, 1917, the property in the No. 1 potatoes contained in the plaintiff's crop passed from the plaintiff to the defendant. This fundamental instruction, followed as it was by others touching the responsibility thereafter for the care and condition of the potatoes which logically flowed from it, was one which approached very nearly to a direction of a verdict for the plaintiff for some amount.   The defendant complains of it as erroneous.   The instruction given necessarily implies that the court interpreted the writing as evidencing the intent of the parties to conclude a present, executed sale, as distinguished from a contract to sell.   Conceding, for present purposes, that its by no means unambiguous language should have that construction, there remains another factor in the situation whose significance the court evidently overlooked.   The plaintiff offered evidence to prove, and the defendant, as far as appears, none to disprove, that at the time the writing was signed the plaintiff's crop of potatoes,

amounting to about 3,000 bushels, had not been sorted or graded, and that those of No. 1 grade, being about two thirds of the whole, were commingled with those of different grades in an indiscriminate mass. Both selection and separation were, therefore, necessary before the identity of the particular potatoes in which the property was to pass to the defendant under the writing could be established. Until that selection and separation should be made, the potatoes coming under the contract were unascertained, and the general property in them could not pass until they were ascertained and their identity determined. That involved a selection in accordance with the specifications and requirements of the contract, and a separation of those selected from those of other grades with which they were commingled. Section 4683 of the General Statutes is specific as to this requirement of a consummated present sale passing property in the goods. It is there expressly provided that "where there is a contract to sell unascertained goods, no property in the goods is transferred to the buyer unless and until the goods are ascertained." While this section had its origin in the Sales Act, it does not lead us to a result different from that which our law antedating it would have reached. *Chapman* v. *Shepard*, 39 Conn. 413, 420; 1 Mechem on Sales, § 697 *et seq.;* Elliott's Connecticut Sales Act, 275.

The record states that the plaintiff offered evidence to prove that subsequent to the transaction of October 16th the plaintiff selected and separated the No. 1 potatoes from the others, and that those so selected were thereafter kept apart from the balance of the crop, and for the defendant.

It is certain that the property in specific potatoes did not pass to the defendant until such selection and separation was made, if it should be found that they ever were made. Whether or not it then passed might

well be a question whose answer was dependent upon the findings of the jury upon such pertinent matters, for instance, as the character of the plaintiff's sorting, or the conduct of the parties in respect to those sorted out as No. 1. Clearly the defendant would not be obligated to accept as No. 1 potatoes, within the specifications of the contract, those of an inferior grade, for no other reason than that the plaintiff had chosen to place them in the No. 1 pile; and if the plaintiff's manner of selection had resulted in the formation of an alleged No. 1 group in which those belonging to other grades appeared in substantial and unreasonable numbers, the question might then become a pertinent one whether there had been an ascertainment of specific potatoes so as to accomplish a transfer of the property in any of them.

If, however, the property in ascertained potatoes should be found to have passed at some time, there well might be material questions of fact involved in the measurement of the plaintiff's damage arising out of conditions operating during the period between the date of the contract and that on which the title passed. The court's instructions, that the property in the potatoes passed on October 16th, 1917, and that, therefore, the defendant was thereafter responsible for their care and assumed all risk of their deterioration, took all possible questions of fact thus indicated away from the jury and restricted the field of the defendant's defense to exceedingly narrow limits. They, in effect, closed the door to all inquiries by the jury save only as to the amount of No. 1 potatoes the plaintiff had ready for delivery, and the loss he sustained by reason of their nonacceptance.

There is error, the verdict is set aside and a new trial ordered.

In this opinion the other judges concurred.